OPINION OF THE COURT
Jones, J.
We hold that a parolee’s constitutional right to be secure against unreasonable searches and seizures is not violated when his apartment is searched, without a search warrant, by his parole officer if the latter’s conduct is rationally and reasonably related to the performance of his duty as a parole officer.
Defendant was paroled on May 10, 1971 while serving a prison sentence for robbery. At the time of the incident here in question he had been directed by Edward O’Neill, his parole officer, to report weekly on Tuesdays. Defendant had telephoned on Tuesday, November 28, 1972. When he came in to see his parole officer the following day he was reminded that he was required to report again on Tuesday, December 5. Defendant failed to report on the 5th and again on December 12 and did not otherwise communicate with his parole officer. On December 13 Officer O’Neill informed his senior officer of *180 defendant’s failures to report, and as a result of their conversation the senior officer issued a parole violation warrant. Defendant’s former parole officer, Edwin Donnelly, also participated in this conversation and reported that defendant had previously lied about his employment status, that he had received welfare without asking permission, and that his attitude toward parole was not what the parole officers thought it should be.
After reviewing defendant’s folder, on December 15, 1972 Officer O’Neill with five other parole officers went to defendant’s residence. Two officers remained outside the apartment building, one watching the back windows, another at the front door and side windows. The others went to defendant’s ground floor apartment. Officer O’Neill knocked on the door which was promptly opened by defendant who admitted the officers. Defendant was taken into custody, searched and handcuffed, and his apartment was then searched. Officer O’Neill testified that prior to the issuance of the parole violation warrant he had had no knowledge or information as to any connection of defendant with narcotics which might have been a violation of his parole. The officer was, however, suspicious that there might be a gun in defendant’s apartment because of the history of weapons in his record. The search revealed .38 caliber bullets near the front door, but no gun was ever found. The searching officers found a hypodermic needle and syringe, 144 glassine envelopes subsequently proved to contain heroin, 49 tinfoil wrappers found to contain cocaine, and an assortment of pills. The police were called and defendant was taken to the precinct station.
Supreme Court denied a motion to suppress the evidence seized from defendant’s apartment and in a jury trial defendant was convicted of criminal possession of dangerous drugs. His conviction was upheld at the Appellate Division and he appeals to our court by permission of a Justice of that court. We affirm.
The principal contention advanced for reversal is that the thorough, exploratory search of his apartment without a search warrant constituted a violation of defendant’s constitutional rights.
 We start with the base proposition that the constitutional prohibition against searches and seizures is addressed only to searches and seizures which are unreasonable (US Const, 4th Arndt; NY Const, art I, § 12). Then we immediately *181 agree with defendant that in consequence of his acquiring status as a parolee, he did not surrender his constitutional rights against unreasonable searches and seizures (cf. Morrissey v Brewer, 408 US 471).
 Proceeding on that predicate we nonetheless observe that in any evaluation of the reasonableness of a particular search or seizure the fact of defendant’s status as a parolee is always relevant and may be critical; what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is (United States ex rel. Santos v New York State Bd. of Parole, 441 F2d 1216, 1218). Approached from another perspective, conduct which may be unreasonable with respect to a parolee if undertaken by a police officer may be reasonable if taken by the parolee’s own parole officer (cf. United States v Consuelo-Gonzales, 521 F2d 259, 266; United States ex rel. Santos v New York State Bd. of Parole, 441 F2d 1216, 1219, supra). In general the standard by which the reasonableness of a search or seizure with respect to a parolee by a police officer is to be measured would be the familiar requirement of a showing of probable cause. (Even under that test, however, the fact of parole status may well be significant in individual cases.)
Where, however, as here, the search and seizure is undertaken by the parolee’s own parole officer, in our view whether the action was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer’s duty. It would not be enough necessarily that there was some rational connection; the particular conduct must also have been substantially related to the performance of duty in the particular circumstances.
Applying these principles to the present case we have no difficulty in upholding the search of defendant’s apartment and the consequent seizure of drugs and drug paraphernalia. We note that the parole officer’s duty has two, sometimes potentially inconsistent aspects: he has an obligation to «detect and to prevent parole violations for the protection of the public from the commission of further crimes; he also has a responsibility to the parolee to prevent violations of parole and to assist him to a proper reintegration into his community. Thus, the parole officer’s responsibility to the parolee might be expected in some instances to warrant procedures *182 which would not be reasonable if the officer were acting to discharge his obligation to the public only. Clearly he does not have a carte blanche, however, to intrude on the private life and affairs of the parolee.
In this case, even prior to his failures to report, defendant had not had an unblemished parole record; his unreliability had been demonstrated. Then, there followed the two failures to report to his parole officer—violations of the most fundamental obligation of the parolee. And these failures followed an explicit reminder of the duty to report given but a week prior to the first failure to report. Additionally the failures to report were complete; no telephone calls had been made or messages left. In these circumstances the issuance of the warrant to detain defendant personally was not only reasonable but probably mandatory. Then, on arriving at defendant’s apartment in the early afternoon, finding him there and observing no physical disability or other hindrance to his reporting, the parole officer’s conduct in searching the apartment for a possible explanation of his otherwise unexplained failure to report was permissible. To the knowledge of his parole officers, this parolee had been convicted of robbery; he had quit his employment without informing his parole officer and was unemployed; he had lied about his employment status and had accepted welfare payments without obtaining permission. In short, defendant had demonstrated that he was thoroughly unreliable. Nor do we conclude that what would thus otherwise have been a permissible search and seizure became impermissible because defendant’s parole officer had enlisted the participation of his fellow officers, particularly in view of the absence of any basis even for surmise as to why defendant had failed to maintain contact with his parole officer, and with no predictable limitation on what the parole officer might expect to encounter. It is also significant that there was no evidence that the searching parole officers were seeking contraband or evidence in aid of prosecution for criminal activity.
Finally, we observe that the standard authorization signed by defendant as parolee for searches of his person, residence or property does not affect the determination we make. That authorization is not to be taken as an unrestricted consent to any and all searches whatsoever or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures. In our analysis, it merely parallels, *183 by way of confirmation, the right of the parole officer which we uphold—namely, the right to conduct searches rationally and substantially related to tjie performance of his duty. Because parole is a matter of legislative grace and not of constitutional right does not mean that unconstitutional conditions may be attached when it is granted.
We have examined defendant’s other contentions and conclude that they are without merit. Recognizing the reluctance of our courts to probe and explore the inner workings of jury deliberations and especially to undo jury verdicts, we find no error in the trial court’s rejection, after a hearing and on articulated findings of fact and conclusions of law, of defendant’s postverdict motion under CPL 330.30 (subd 2) to set aside the verdict on the ground that he had been deprived of a fair trial in consequence of facial expressions of the court stenographer assertedly manifesting her disbelief in defendant’s innocence. With reference to the refusal of the trial court to suppress defendant’s oral statements made to Officer O’Neill at the time he was taken into custody and his apartment searched, we are confronted with an affirmed factual finding that they were voluntary, and we see no basis as a matter of law for disturbing this finding. Nor in the circumstances of this case was it error to quash defendant’s sweeping subpoena duces tecum requesting parole and medical records.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.