Jasen, J.
(dissenting). The majority holds that absent exigent circumstances a probation officer may not search the personal property of a probationer without a prior judicial determination that reasonable cause exists to believe that the probationer has violated the terms of his probation. With this conclusion I cannot agree and must, therefore, respectfully dissent.
There is no dispute that a probationer, like a parolee, does not upon the acquisition of probationary status relinquish all constitutionally guaranteed rights. (See Gagnon v Scarpelli, 411 US 778; Morrissey v Brewer, 408 US 471.) His right to be free from unreasonable searches and seizures (US Const, 4th Amdt; NY Const, art I, § 12) remains inviolate notwithstanding his probationary status. (Cf. People v Huntley, 43 NY2d 175.) However, as in the case of a parolee, the reasonableness of a search or seizure is not to be measured by standards applicable to individuals not on probation or parole. What may constitute an unreasonable search of a law-abiding citizen may nevertheless constitute a reasonable search of a probationer. (See People v Fortunato, 50 AD2d 38, People v Vales, 78 Misc 2d 443; People v Adams, 71 Misc 2d 658; People v L’Hommedieu, 62 Misc 2d 925; People v Chinnici, 51 Misc 2d 570; see, generally, White, Fourth Amendment Rights *178 of Parolees and Probationers, 31 U Pitt L Rev 167; Note, Fourth Amendment Limitations on Probation and Parole Supervision, 1976 Duke LJ 71.) Equally significant to a determination of the reasonableness of a search imposed upon a probationer is the status of the individual conducting the search: that is, whether the search is conducted by a probation officer in performance of his duty in supervising a probationer or by a police officer in the course of routine investigation. (See United States v Consuelo-Gonzalez, 521 F2d 259, 266; cf. People v Huntley, 43 NY2d 175, 181, supra.)
Application of these principles in the present case dictates a finding that the search of appellant and his personal property was, under the circumstances, reasonable. Appellant had been placed on probation after pleading guilty to the crime of possession of a dangerous weapon in satisfaction of an indictment charging him with possession of drugs and a gun. The tip which Officer Petrovick, appellant’s probation officer, received from Sergeant McBurney indicated that appellant was once again in possession of drugs and a gun. Having received that information, Officer Petrovick, as appellant’s probation officer, had a duty both to appellant and to society to investigate the complaint. Had Officer Petrovick closed his eyes to this information, the possibility existed that appellant might have become involved in more serious trouble causing injury to a third party and perhaps foreclosing any chance of his rehabilitation.
Significantly, this is not a case in which the police, armed with less than probable cause, merely employed a probationer’s probation officer as a tool to effectuate a search in calculated circumvention of a probationer’s constitutional rights. The decision to investigate the complaint was made by the probation department, which contacted the police department to arrange for a police officer to accompany Officer Petrovick and a fellow probation officer during the investigation. As testified to by Officer Petrovick, the request for a police escort was motivated by safety considerations prompted by the legitimate belief that appellant was armed with a gun, an all the more alarming discovery when coupled with the realization that probation officers do not carry guns. Moreover, once on the scene the limited role played by Sergeant McBurney in the investigation militates against any finding of deliberate circumvention of constitutional rights by the police. An examination of the record reveals that only Probation Officers *179 Petrovick and Shevlin participated in the search of appellant’s automobile. Nor can it be said that Officer Shevlin’s participation in the search and his ultimate discovery of the weapon invalidates the search. This court has stated on a previous occasion, with respect to a search of a parolee, that an otherwise valid search does not become impermissible merely because the parolee’s parole officer enlisted the aid of fellow parole officers in conducting the search. (People v Huntley, 43 NY2d 175, 182, supra.)
The majority, however, holds the validity of this search dependent upon literal compliance with a procedure adopted by the Legislature in 1971 for the supervision of probationers. (CPL 410.50.) While this procedure does provide for the issuance by a court of a "search order” based upon reasonable cause, I cannot subscribe to the view espoused by the majority that, absent exigent circumstances, a search order must be secured prior to the search of a probationer’s property or of his person if he is not taken into custody.
Nothing in the procedure adopted by the Legislature suggests that the availability of a search order was intended to pre-empt, rather than merely codify, existing case law (see Preiser, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 410.50, p 149), sustaining a warrantless search of a probationer on less than probable cause. (People v L’Hommedieu, 62 Misc 2d 925, supra; People v Chinnici, 51 Misc 2d 570, supra.) Had the Legislature intended to modify existing case law by requiring, except in exigent circumstances, that a probation officer secure a search order based upon reasonable cause before searching a probationer and his property, it could have so stated. Inasmuch as the Legislature has not done so, I would view the procedure adopted for the supervision of probationers as permissive, rather than mandatory.
It is not contended, nor could it be successfully contended, that there exists in this case any evidence of harassment on the part of Officer Petrovick, which might render an otherwise reasonable search unreasonable. (Cf. United States ex rel. Randazzo v Follette, 282 F Supp 10, 13, affd 418 F2d 1319, cert den 402 US 984.) On the contrary, the record indicates that Officer Petrovick’s conduct in searching appellant was reasonably related to his duty as a probation officer. Probation officers must be given wide latitude to investigate and conduct a search of a probationer if the rehabilitative goal of probation as a socially desirable alternative to incarceration is to be *180 realized. As a practical matter, absent vigilant supervision, the average probationer might not receive sufficient impetus to deter his further involvement in criminal activity during probation. Such an unfortunate occurrence would be injurious not only to society and the individual probationer, but also to the continued viability of probation as a productive alternative to incarceration.
An interpretation of CPL 410.50 as mandating that probation officers obtain prior judicial approval before searching a probationer may tip the scale upon which sentencing courts weigh the benefits probation affords a convicted defendant as against the risks incurred by society, creating a greater hesitancy to sentence defendants to a period of probation, rather than incarceration. (Cf. People v Dowery, 20 Ill App 3d 738, affd 62 Ill 2d 200.) Until the Legislature expressly indicates its intention to require a judicial determination of reasonable cause before a probation officer may search a probationer’s personal property or his person if he is not taken into custody, I would not disturb this balance.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Jones, Fuchsberg and Cooke concur with Judge Wachtler; Judge Jasen dissents and votes to affirm in a separate opinion in which Chief Judge Breitel and Judge Gabrielli concur.
Order reversed, etc.