OPINION OF THE COURT
Burton G. Hecht, J.
Upon the foregoing papers this writ of habeas corpus is hereby dismissed.
Both counsel for petitioner and respondent have submitted extensive memoranda of law in support of their arguments herein. The issues raised are most interesting.
*374 Relator contends that the Division of Parole failed to make a showing at relator’s preliminary hearing that there was legally competent evidence presented to constitute probable cause to believe that relator violated the terms of her parole in an important respect.
Essentially the critical piece of evidence submitted at relator’s hearing was a laboratory report reflecting that a urine specimen submitted to the lab had tested positive for cocaine. Relator’s parole officer testified that the specimen was taken from relator on December 9, 1987.
Counsel argues ostensibly that the urine specimen upon which the test result was based was seized from this relator in violation of her rights under both the United States and New York State Constitutions in that the Division lacked reasonable suspicion to believe that Ms. Jimenez was presently under the influence of or recently using drugs. Counsel further urges that the Division failed to follow its own procedures for the obtaining, safeguarding and transporting of relator’s urine specimen. In addition, counsel suggests that there were less intrusive measures to determine whether Ms. Jimenez had reverted to drug abuse.
Respondent counters by alleging that relator’s parole officer was within her authority as set forth in Executive Law § 259-a (4), (5) and (9) to require relator to submit to a urine sample. Respondent further urges that the above subdivisions cloak the Division with the authority to facilitate and investigate alleged parole violations and enforce and maintain an effective, efficient, and fair parole system. Moreover, respondent states that due process does not require that relator’s arms be checked for needle marks as a prerequisite to urinalysis testing.
Briefly, relator was initially paroled in August of 1983 after being sentenced to a State jail term. The court notes that a special condition of her parole was that she participate in outpatient substance abuse counseling. The record further reflects that Ms. Jimenez has an extensive history of drug abuse and previously violated her parole on drug-related charges. In fact, her final revocation hearing decision of August 1987 sustained her parole violation and as an alternative to incarceration directed that she enter and remain in a drug treatment program on a last-chance basis. Relator had been routinely monitored for substance abuse by urinalysis testing during the period of time encompassing her most recent parole supervi *375 sion. Based on the above, and notwithstanding the lack of any personal knowledge of relator’s present condition with respect to substance abuse, Parole Officer Guzman’s request of relator to submit to a urine sample did not in the court’s opinion constitute an illegal and unconstitutional seizure of relator’s person. Moreover, the court is unpersuaded by counsel’s contention that under the circumstances Parole Officer Guzman’s request was completely arbitrary and unreasonable, thereby violating relator’s Fourth Amendment rights.
The basic premise of parole is for the supervising parole officer to establish a working and meaningful relationship with the parolee in order to serve two distinct functions. The first is to aid the convicted felon with the difficult process of reintegration into society. The second is to benefit the society-at-large by the addition of a productive "culturally” compatible individual and, conversely, to guard against the premature introduction of a person whose actions are indicative of insufficient rehabilitation. (See, People ex rel. Grace v Bantum, 113 Misc 2d 313 [Sup Ct, Bronx County, Mar. 17, 1982].)
Obviously, parolees are prohibited from using illegal drugs. (9 NYCRR 8003.2.) Moreover, the potential dangers that the evidence of drug abuse poses for both the individual and society are well documented. Thus, a parole officer’s conduct in requesting a urinalysis from a parolee on a report day surely is substantially related to the performance of a duty to determine if the parolee is drug free. Parole Officer Guzman had a duty to routinely monitor relator for reversion to substance abuse in light of Ms. Jimenez’ extensive prior background of such abuse. There is no other method to definitely determine whether relator had recently or was presently using drugs. A parolee whose genuine rehabilitation is in jeopardy needs prompt detection and intervention by the Division (Griffin v Wisconsin, 483 US 868, 107 Sup Ct 3164 [1987]).
Counsel does not provide authority for his contention that relator’s parole officer should have first utilized a "less intrusive” procedure such as checking for hypodermic needle marks on relator’s arms prior to compelling urinalysis testing. He provides no evidence or foundation that due process requires a "less intrusive” procedure. The before-mentioned interests of the Division are paramount to the minimum privacy interests of a parolee. The parole officer merely continued the regimen of urinalysis testing instituted by relator’s former parole officer.
*376 Accordingly, a parolee, whose expectations of privacy are clearly less compelling, has no standing to challenge the Division’s routine urinalysis testing as an unreasonable search and seizure in light of the clear necessity for such testing to fulfill its legislative mandate to maintain an effective parole system. (People v Huntley, 43 NY2d 175 [1977].)
The test results were properly admitted into evidence at relator’s preliminary hearing and supported a probable cause finding of parole violation. Counsel’s arguments that the procedures utilized by the Division for obtaining, safeguarding and transporting relator’s urine specimens may more properly be the subject of a final hearing. At that time, the final Hearing Officer will determine whether said procedures utilized were sufficiently reliable.