OPINION OF THE COURT
Timothy J. Flaherty, J.
During a home visit of a parolee by Senior Parole Officer John Zwaryczuk, the defendant made admissions which in turn led to the seizure of certain contraband all of which the People seek to introduce at defendant’s trial. Determination of the motion to suppress now before this court for hearing and decision requires the court to address certain issues left open by the Court of Appeals in two cases, People v Hale (93 NY2d 454 [1999]) and People v English (73 NY2d 20 [1989]). I make the following findings of fact and conclusions of law.
Findings of Facts
In April 2001 Senior Parole Officer John Zwaryczuk, of the Special Offenders Unit in Brooklyn, was assigned to a pilot operation called the Target Offender Program (TOP), a joint task force comprised of parole officers and police officers. Their mission was to supervise high risk parolees, that is, parolees considered more likely to reinvolve themselves in criminal activities.
Sometime in November 2001, Parole Officer Zwaryczuk and Sergeant Robert Ganley, a police officer also assigned to TOP, were told by a confidential informant that a parolee had been dealing drugs, had possessed cocaine, had brandished a weapon at the owner of a night club and had, while seated in a Ford Expedition, displayed a silver Baretta to him. Further investigation as to the identity of the parolee narrowed the hunt to a license plate, a nickname and a location.
On November 27, 2001, Sergeant Ganley, Officer Renee Murriel and Detective David Casey located the vehicle, and surveilled it for a period of time until they observed an individual enter the vehicle. They ultimately placed that individual under arrest.
The arrested individual turned out to be the defendant James Daniels, a parolee. Although narcotics had been found *322 in the defendant’s car, the defendant was subsequently released when the Brooklyn District Attorney’s Office declined prosecution. On the following day Sergeant Ganley told Parole Officer Zwaryczuk about the arrest, the identity of the defendant and the action of the Brooklyn District Attorney’s Office.
At approximately 9:00 p.m. on December 4, 2001, Parole Officer Zwaryczuk, Detective Casey and Police Officer Murriel went to Queens for the purpose of conducting a home visit of the defendant. As a parolee, defendant had signed the standard mandatory parole contract wherein parolees agree to allow parole officers to inspect their residences and their personal property. The Parole Manual authorizes such searches at any time. In addition, the manual requires its officers to have an articulable reason prior to conducting such a visit or search and that the parolee consent to the search.
The purpose of this particular visit was twofold. First, when he was arrested in Brooklyn, defendant had offered to act as a confidential informant for the police. Sergeant Ganley had, as is required, submitted a letter to Parole Officer Zwaryczuk requesting permission from the Division of Parole to use defendant as an informant. Such permission was at the discretion of Zwaryczuk’s regional supervisor. Accordingly, Zwaryczuk wanted to assess the information the parolee was offering as part of the decision-making process in this regard. Second, Zwaryczuk had himself sat in on the original interview with the confidential informant who had supplied the information about the guns, drugs and drug dealing that had ultimately been linked to the defendant.
Initially, Detective Casey telephoned defendant’s apartment and learned from his wife that he was not home. Defendant’s wife agreed to try and contact him on his cell phone. She did so and when Zwaryczuk got on the phone he identified himself, told him he wanted to do a home visit and that he wanted him home. When defendant replied that he was working on Long Island, Zwaryczuk told him that “I have to see you at your house. We have to do a home visit at your home.”
Defendant returned to his neighborhood at approximately 9:30 p.m. and, as he was parking his car a few blocks from his apartment, he so advised Detective Casey by telephone. The team of officers then met the defendant at his car, placed him in their police van and accompanied him to his apartment.
Zwaryczuk told the defendant that he wanted to see his apartment and, as the police officers waited in the hallway outside the apartment, the defendant opened the door and he *323 and the defendant went inside together. Entering the living room, the defendant introduced him to his wife Dawn. At Zwaryczuk’s direction, the defendant then showed him his bedroom, stating that this was where he normally slept, and that his wife normally slept in the living room. Zwaryczuk examined the bedroom and then he and the defendant exited the apartment and returned to the hallway.
Zwaryczuk then decided that he wanted to reexamine the room. He and Sergeant Ganley then reentered the apartment with the defendant. He took Sergeant Ganley with him for security reasons. As they walked toward the bedroom, Zwaryczuk asked the defendant if he had any problems with him searching the room. The defendant replied, “No, go ahead.” The three men entered the bedroom and, before beginning the search, Zwaryczuk sat the defendant down on the bed and asked, “Do you have any contraband in the room,” whereupon the defendant nodded toward an open closet and stated, “I have some cocaine in my bag in the closet.”
Zwaryczuk then looked inside a red toilet bag on the shelf in the closet and found a clear plastic bag containing a white powder which he believed to be cocaine. He then arrested the defendant and placed him in handcuffs.
Thereafter he continued to search the bedroom and found a shoe box full of money, an empty nylon holster, some drug paraphernalia and scales. He also found an inoperable hand grenade. After the search was completed Officer Murriel prepared a written memorialization of defendant’s consent to search the apartment, presented it to defendant and obtained the defendant’s signature.
Conclusions of Law
Preliminarily, the court notes that, during the course of the hearing, defense counsel sought a Darden hearing (People v Darden, 34 NY2d 177 [1974]) in order to determine whether the confidential informant in fact existed. In Darden (supra), the Court held that the trial court should conduct an in camera hearing at which the confidential informant is produced in cases “where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from an informer” (id. at 181) and a question has been raised as to the informant’s identity (see also, People v Edwards, 95 NY2d 486 [2000]). In this case the court denied the application because (1) the question of probable cause is not at issue, and (2) because, as will be set forth *324 with more particularity below, there was ample reason supporting the decision of the parole officer to conduct a search, independent of the information furnished by the informant.
The People contend that the physical evidence recovered by Parole Officer Zwaryczuk’s search was legally obtained (1) because the defendant had signed a standard form parole contract in which he consented to searches of his person and residence at the discretion of his parole officer (9 NYCRR 8003.2 [2002]), (2) because the search was reasonably and rationally related to the performance of his duties as a parole officer, and (3) that the search was conducted in compliance with the Parole Manual which governs the conduct of parole officers in that (a) Officer Zwaryczuk had an articulable basis to conduct the search, and (b) the defendant consented to the search.
The court finds that there is ample proof in the record to support all of the factual contentions relied upon by the District Attorney. As to the first contention, the defendant concedes, as he must, that he did in fact sign the standard form parole contract as a condition of his parole. He thereby consented to home visits as well as searches of his person and residence by his parole officer.
The court is also convinced that Officer Zwaryczuk’s search was rationally and reasonably related to the performance of his duties as a parole officer.
The defendant, a parolee, had indicated a desire to serve as a confidential informant for the police. Officer Zwaryczuk testified that, as part of the Division of Parole’s supervisory responsibilities, for a parolee to assume such a status required the approval of a superior officer in parole. Toward that end, Sergeant Ganley, the ranking police officer in the Target Offender Program, prepared a letter requesting such approval and turned it over to Senior Officer Zwaryczuk, the ranking parole officer in TOP for the purpose of securing approval from his own superior officer. The letter was introduced into evidence at the hearing.
Parole Officer Zwaryczuk testified that he wanted to assess the defendant before acting on the request. It was parole’s decision to conduct the home visit, not the police. It was Zwaryczuk’s decision to conduct the search, not the police. He made these decisions, armed with the additional knowledge (1) that the defendant had recently been found in possession of drugs, and (2) that, according to an informant, defendant might himself be dealing drugs and in possession of weapons.
*325 The court finds that Parole Officer Zwaryczuk’s decision to investigate further, by conducting a home visit and a search of his residence, was both a reasonable and appropriate exercise of his authority as a parole officer since, ascertaining whether the parolee was in fact engaged in criminal activities was plainly relevant to his character, reliability and credibility — all crucial factors in reaching a decision as to whether or not to approve Sergeant Ganley’s request.
Finally, the court finds that Officer Zwaryczuk asked for and received permission from the defendant to search the room which yielded the evidence sought to be suppressed. Since, for the reasons set forth above, Officer Zwaryczuk certainly had an articulable basis for conducting the search, the court finds that the search was conducted in compliance with Parole Manual regulations.
What remains to be determined is whether the aforementioned facts establish, as a matter of law, that the evidence was obtained in a manner consistent with the defendant’s constitutional rights. For while it is true that the defendant’s status as a parolee severely truncates his constitutional right to be free of intrusive behavior by a parole officer, it is also true that by dint of that status, he does not entirely surrender his right against unreasonable searches and seizures (cf., Morrissey v Brewer, 408 US 471 [1972]).
The seminal case in this regard in New York remains People v Huntley (43 NY2d 175 [1977]). In Huntley, the Court rejected the notion that the standard form consent search document signed by all parolees constitutes a blanket waiver of a parolee’s Fourth Amendment rights. Thus the District Attorney cannot (and in fact does not) rely on that fact alone to support her claim that the seizure of evidence herein is beyond constitutional attack.
It is in Huntley (supra at 179), that the Court of Appeals articulated the standard that is central to the resolution of the constitutional issues at bar, to wit, “We hold that a parolee’s constitutional right to be secure against unreasonable searches and seizures is not violated when his apartment is searched, without a search warrant, by his parole officer if the latter’s conduct is rationally and reasonably related to the performance of his duty as a parole officer.”
This standard was arrived at by our Court of Appeals in the absence of any guidance from the Supreme Court as to the parameters of a parolee’s Fourth Amendment rights in the context of the responsibilities of parole officers. But it has since done so in the analogous area of probation.
*326 In Griffin v Wisconsin (483 US 868 [1987]), the Supreme Court held that while the “special needs” attendant to the supervisory responsibilities of the government in this area render both the Warrant Clause and the Probable Cause Clause of the Fourth Amendment impractical, a search conducted pursuant to a “reasonable” legislative or regulatory scheme would pass constitutional scrutiny (Griffin, supra at 873). Thus the Court applied the familiar administrative search standard set forth in Camara v Municipal Ct. of City & County of San Francisco (387 US 523 [1967]) to probationers and their supervisors.
Although our Court of Appeals has withheld judgment on whether parolees stand in precisely the same constitutional shoes as probationers (see, People v Hale, 93 NY2d at 459 n 2 [1999]; but see, People v Dyla, 142 AD2d 423 [2d Dept 1988]; People v Lopez, 288 AD2d 70 [1st Dept 2001]), the Second Circuit has already applied the Griffin standard to parolees (United States v Grimes, 225 F3d 254, 258 [2d Cir 2000]). As the court noted in Grimes (supra at 258), quoting with approval United States v Cardona (903 F2d 60, 63 [1st Cir 1990]), if anything, “parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen’s absolute liberty than do probationers.” This court is persuaded by the reasoning in Grimes (supra) and, in the absence of state appellate court guidance on this issue of law, holds that the Griffin standard is equally applicable to parolees.
Since the Griffin (supra) standard is applicable to the situation at bar, it is necessary for this court to determine (1) if the regulatory scheme is reasonable and therefore constitutional, and (2) if Officer Zwaryczuk complied with the regulatory scheme in conducting the search. The court finds that the People have satisfied both prongs of the Griffin (supra) standard.
The regulation at issue, promulgated pursuant to Executive Law § 259 (2) by the chairman of the Division of Parole, reads, in pertinent part, as follows:
“A parole officer may search a releasee for evidence of a crime or evidence of a violation of any of the releasee’s conditions of parole where the officer has an articulable reason for conducting the search that is reasonably related to the circumstances of the particular case and rationally related to the officer’s duty to supervise the releasee.” (New York State Division of Parole’s Policy and Procedures *327 Manual Item 9405.04, § II A [hereafter referred to as the manual] [emphasis added].)
The authority of the parole officer to search is further limited by section I B 4 of the manual which requires the consent of the parolee, or any other authorized resident.
The regulatory language has adopted what is the seminal standard articulated in the New York case law, first set forth in People v Huntley (43 NY2d 175, 181 [1977]), wherein the Court of Appeals held that the constitutional test is “whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer’s duty.” The additional regulatory requirement that the parole officer have an “articulable basis,” however, does not appear to have been grounded in case law. But its inclusion, which places a limitation on the power of the parole officer that exceeds that required in Huntley (supra), particularly when it is read in conjunction with the consent requirement, plainly renders the New York regulatory scheme “reasonable” and therefore constitutional (cf., Griffin, supra', Grimes, supra). Since, as previously stated, the court is satisfied that Officer Zwaryczuk complied with the regulatory scheme, both prongs of the Griffin standard have been met.
The defendant also claims that the Brooklyn arrest was not prosecuted because the underlying search was unlawful. He argues further that the illegality warrants suppression of the evidence at bar under the fruit of the poisonous tree doctrine (Wong Sun v United States, 371 US 471 [1963]; cf., People ex rel. Piccarillo v New York State Bd. of Parole, 48 NY2d 76 [1979]). This contention is without merit. First, there was no adjudication made as to the lawfulness of the search made in Brooklyn. That the District Attorney declined prosecution at the outset of the case is hardly dispositive of the matter. Second, assuming arguendo, that the actions of the police lacked the requisite legal predicate, be it probable cause or reasonable suspicion, it does not follow therefrom that the same predicate would be inadequate to justify the actions taken a week later by the parole officer.
Third, the information that had been gathered concerning defendant’s displaying of a weapon, his possible drug dealing and, of course, the need to investigate his potential use as a confidential informant were all factors that were independent of the evidence found in defendant’s car in Brooklyn that resulted in his arrest (Silverthorne Lbr. Co. v United States, 251 US 385 [1920]; People v Arnau, 58 NY2d 27 [1982]). As *328 such, the fruit of the tree doctrine is inapplicable to the case at bar.
In sum, the search conducted by Officer Zwaryczuk was constitutional under both the Huntley and Griffin rationales. As such, the defendant’s motion to suppress the physical evidence seized from his apartment is denied.
Defendant’s motion to suppress the statements defendant made to Officer Zwaryczuk prior to the search is denied as well. The statements in question were (1) his admission that the room ultimately searched belonged to him, and (2) his response to the question, “Do you have any contraband in the room,” to which the defendant replied, “I have some cocaine in my bag in the closet.” It is undisputed that Officer Zwaryczuk did not give the defendant Miranda warnings prior to engaging him in the conversation that led to the statements.
The court is satisfied that the defendant was not in custody so as to trigger an obligation to Mirandize the defendant. The conversation took place in defendant’s own home. Neither Officer Zwaryczuk nor any of the accompanying officers displayed weapons. The defendant was not under arrest or handcuffed at the time of the incriminating conversation. Indeed, this was not an arrest situation at all, but rather part of the process that was to lead to defendant becoming a confidential informant. As such, in this noncustodial setting, the failure to give Miranda warnings is ordinarily irrelevant (Miranda v Arizona, 384 US 436 [1966]; People v Yukl, 25 NY2d 585 [1969]).
But here, the issue is complicated by the fact that the defendant is a parolee and the question was posited by his parole officer. In People v English (73 NY2d 20, 23 [1989]), it was argued that since “answers given by parolees during interviews with their parole officers are invariably compelled in a constitutional sense due to the inherently coercive effect of the parolee’s legal obligation to answer truthfully” any incriminating statement given in the absence of Miranda warnings is per se, illegally obtained. Although the Court of Appeals suppressed the statements at issue in English (supra), because the parole officer failed to Mirandize his parolee, the Court specifically declined to “decide whether the nature of the parole officer-parolee relationship is such that even routine, noncustodial questioning must be preceded by Miranda warnings if it is concerned with possible criminal activity” (English at 24). In the case at bar, obviously, only the question concerning contraband is implicated in the issue left undecided in English.
*329 No case in New York before or since English has answered that question in the affirmative. The cases which, like English (supra), have suppressed statements made to parole officers who failed to Mirandize their parolees are factually distinguishable. In English, the parolee was suspected of committing a past burglary. When he reported to his parole officer, routine questioning revealed that he has been using marijuana and a routine search unearthed a knife. The parole officer then declared that he was “violating” the parole and placed him in handcuffs. Then, without first Mirandizing him, he questioned him about the burglary and obtained the admissions which were subsequently suppressed by the Court of Appeals.
In People v Parker (82 AD2d 661 [2d Dept 1981]), the Appellate Division held that “Statements made to a parole officer by a parolee cannot be used against the parolee to establish his guilt with respect to a crime for which the parolee is indicted, where the circumstances are that the parolee was not given Miranda warnings * * * and the parolee was represented by counsel in the criminal proceedings under the indictment.” (Id. at 662 [emphasis added].) The Court of Appeals affirmed for the reasons set forth in the Appellate Division decision (57 NY2d 815 [1982]).
In People v Greeley (2001 NY Slip Op 40259[U] [Nassau County Ct 2001, Calabrese, J.]), that court construed English and Parker as mandating suppression of statements made to a probation officer who, upon learning that a weapon had been seized from his probationer’s apartment, went to the apartment, immediately placed the probationer under arrest and questioned him without Mirandizing him. In this court’s view, none of these scenarios set forth in the aforementioned cases govern the circumstances at bar. The common theme in all of these cases is custodial questioning about a specific past crime (see also, People v Mackie, 133 AD2d 514 [4th Dept 1987] [a rape]; People v Candelaria, 63 AD2d 85 [1st Dept 1978] [a murder]).
Here, no right to counsel is implicated. There was no pending case. While it is true that Officer Zwaryczuk had information which indicated that the defendant might well be engaged in criminal conduct, he was not at defendant’s home for the purpose of investigating a specific past crime, rather, for the reasons set forth earlier.
In the court’s view, the single question asked by Officer Zwaryczuk, to wit, “do you have any contraband in the room?” is an inquiry that goes to the very heart of the supervisory *330 components of a parole officer’s duties, as opposed to his investigative — law enforcement duties — since it is a question aimed, in part at ascertaining if the parolee is using drugs— obviously an indispensable element in evaluating his rehabilitative progress (see generally, People v Hale, 93 NY2d 454 [1999]).
Courts have always drawn distinctions between the supervisory and law enforcement duties of parole officers (see, People v Huntley, supra at 181-182) and acknowledged that the same conduct might well be deemed reasonable “when discharging his responsibilities to the parolee” but not so when discharging his duty “to the public” (id.). Such a distinction is appropriate in this setting as well. With this in mind, the court holds that it was reasonable and thus lawful and constitutional for Officer Zwaryczuk to make the inquiry without prefacing it with Miranda warnings (accord, People v Edwards, 154 AD2d 150 [3d Dept 1990]).
Finally, inquiring about the presence of contraband embraces, not merely the potential presence of drugs, or other evidence of criminality, but also the possible presence of weapons. This, in turn, implicates issues of safety for the officers which, in the court’s view, constitute an additional justification for permitting such an inquiry, without requiring Miranda warnings (see, generally New York v Quarles, 467 US 649 [1984]; see also United States v Newton, 181 F Supp 2d 157 [ED NY 2002, Trager, J.] [wherein a similar inquiry, coincidentally made by Officer Zwaryczuk himself, was upheld under the “public safety” rule in Quarles]).
For all of these reasons, the court holds that Zwaryczuk’s inquiries were properly made without Miranda warnings. The court further rejects any claim that the relationship between the parolee and his parole officer, in and of itself, renders the statement involuntary and holds that the statements were involuntary in all respects. As such, defendant’s motion to suppress the statements is denied in all respects.