People v Whyte (2025 NY Slip Op 51934(U))

[*1]

People v Whyte

2025 NY Slip Op 51934(U)

Decided on December 5, 2025

County Court, Tompkins County

Miller, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 5, 2025
County Court, Tompkins County

The People of the State of New York

against
Corbin Whyte, James Marshall, and Destynie Edwards, Defendants.

Ind. No. 70070-24

D.D.A. Andrew J. Bonavia, Esq.
J. Justin Woods, Esq., Attorney for Defendant Whyte 
Daniel J. Urda, Esq., Attorney for Defendant Marshall
Lance Salisbury, Esq., Attorney for Defendant Edwards

Scott A. Miller, J.

Defendants James Marshall and Corbin Whyte move to strike the People's Certificates of Compliance ("COCs") and Statements of Readiness ("SORs") and seek dismissal of the indictment under CPL §§ 245.50, 30.30, and 210.20(1)(g). They contend that because certain discovery items were disclosed after March 11, 2024, the People's COC was invalid and the March 11 readiness declaration was illusory. The Court disagrees.
The Court has reviewed and considered the following submissions, which together constitute the complete record on these motions: (1) the Marshall Order to Show Cause filed May 27, 2025 by Daniel J. Urda, Esq.; (2) the May 27, 2025 correspondence from Deputy District Attorney Andrew J. Bonavia; (3) the May 28, 2025 Whyte Order to Show Cause filed by J. Justin Woods, Esq.; (4) the People's July 1, 2025 Affirmation in Opposition (Bonavia); (5) the July 15, 2025 Marshall Reply Affirmation (Urda); (6) the July 16, 2025 Whyte Reply Affirmation (Woods); (7) the July 29, 2025 People's Sur-Reply (Bonavia); and (8) the August 8, 2025 correspondence from Woods correcting his speedy-trial calculation. Collectively, these filings define the full evidentiary and procedural context for the CPL § 245 and § 30.30 issues now before the Court.
After careful review of the motion record, the Court finds that the People exercised due diligence, acted with scrupulous candor, made reasonable inquiries under CPL Article 245, promptly corrected inadvertent omissions, and remained within the § 30.30 time. The defendants' arguments are unsupported by the record, inconsistent with the recently amended statute, and contrary to controlling precedent. For the reasons that follow, the motions are DENIED IN THEIR ENTIRETY, and this matter remains scheduled for jury trial on January 20, 2026 at 9:00 a.m.
Events of October 11, 2023
On October 11, 2023, Senior Parole Officer Brent Vaughn observed defendants Whyte and Marshall sitting in a black Toyota 4Runner with Kansas plates parked near the Tompkins County Department of Social Services. Over approximately forty minutes, multiple individuals approached the SUV, engaged in brief hand-to-hand exchanges through the passenger window, and left immediately—conduct Vaughn recognized as consistent with street-level narcotics distribution.
Knowing that Whyte's driver's license was suspended, Vaughn requested Ithaca Police Officer Israel Cosgrove to initiate a stop. Officer Cosgrove located the SUV on North Albany Street. Whyte exited the vehicle despite repeated commands to remain inside; a license check confirmed that his privilege to drive was both suspended and expired.
Because Whyte was on parole, Vaughn and Parole Officer Harmer conducted a parole search of the SUV. Inside separate backpacks they discovered:
• A loaded P80 "ghost gun";
• A loaded Glock 26;
• Cocaine, methamphetamine, and paraphernalia;
• Various items consistent with street-level distribution.
Whyte, Marshall, and the third occupant, Destynie Edwards, were arrested. Defendants Whyte and Marshall are jointly charged with four weapon-possession offenses—two counts of Criminal Possession of a Weapon in the Second Degree [Penal Law § 265.03(3)] and two counts of Criminal Possession of a Weapon in the Third Degree [Penal Law § 265.02(1)]. Whyte and Marshall are both further charged with one count of Criminal Possession of a Controlled Substance in the Third Degree [Penal Law § 220.16(1)] under count five. Defendant Edwards is separately charged with one count of Criminal Possession of a Controlled Substance in the Third Degree [Penal Law § 220.16(1)] under count six. Edwards has not participated in this round of motions and her case has been severed for separate jury trial by previous order of this Court, entered May 20, 2025.

Suppression Proceedings
The Court conducted evidentiary suppression hearings on November 20, 2024 and January 17, 2025. As set forth in this Court's May 5, 2025 suppression decision, the evidentiary record established a straightforward and credible sequence of events. The testimony of Senior Parole Officer Brent Vaughn, Ithaca Police Officer Israel Cosgrove, and Parole Officer Kevin Harmer was fully consistent with the body-worn camera evidence, and the Court found each witness entirely credible. On October 11, 2023, defendants Whyte and Marshall—both parolees with written conditions authorizing searches of their person and property and prohibiting possession of controlled substances—were observed by SPO Vaughn entering and exiting a black Toyota 4Runner with Kansas plates. Over a 30- to 40-minute period, Vaughn witnessed roughly a dozen hand-to-hand narcotics transactions at the SUV and confirmed, through Sgt. Jamie Vann, that Whyte lacked a valid driver's license and was forbidden from operating any vehicle without parole permission. After Whyte drove the SUV away, Officer Cosgrove, acting at Vaughn's direction and after independently confirming Whyte's suspended/expired license, conducted a traffic stop. Following Whyte's noncompliant exit from the vehicle and the removal of all occupants, parole officers lawfully searched the SUV with supervisory authorization and recovered two handguns—each located in a separate backpack—and narcotics found in one of the bags.
This Court concluded that both the stop and the search were justified under long-standing principles governing parole supervision. Under People v. Huntley, 43 NY2d 175, 181—82 (1977), People v. Walker, 80 AD3d 793, 794 (3rd Dept. 2011), and People v. Moore, 229 AD3d 1279, 1280 (4th Dept. 2024), a parole officer may search a parolee's person or property without a warrant when the search is "rationally and reasonably related to the performance of the parole officer's duty" and undertaken to detect or prevent parole violations. Here, Vaughn personally observed multiple apparent hand-to-hand drug transactions at the SUV, Whyte driving in direct violation of explicit parole conditions, and Marshall's involvement with the vehicle—all of which provided ample grounds for a comprehensive parole search to determine the extent of the suspected violations. The Court further found that Officer Cosgrove was acting solely as an agent of the parole officers, that no separate or independent police investigation was underway, and that the entire encounter remained a parole-violation inquiry from start to finish. For these reasons, the Court denied the suppression motions of defendants Whyte and Marshall in their entirety.

Scope of Discovery and DEMS
Discovery in this case was extensive, multi-agency, and unfolded over a significant period. It included:
• DOCCS parole records;
• Ithaca Police Department investigative files;
• CUPD materials;
• Hours of body-worn camera footage;
• 911 and dispatch recordings;
• NYSP Crime Laboratory narcotics and DNA reports;
• Chain-of-custody documentation;
• Photographs and digital media;
• DEMS-stored digital files;
• Multiple cell-phone extractions.
Although DOCCS is not a "law enforcement agency" for purposes of CPL 245.20(1), see People v. Branton, 238 AD3d 1429, 1431—1432 (3rd Dept. 2025) (holding that DOCCS is "not a police or law enforcement agency for discovery purposes" and its disciplinary records are outside the People's constructive possession), and People v. Walker, 232 AD3d 1214, 1217 (4th Dept. 2024), the People nevertheless collected the parole-officer reports from DOCCS and disclosed them before filing the March 11, 2024 Certificate of Compliance. This voluntary production— despite the absence of any statutory duty—further demonstrates the prosecution's diligence and good-faith efforts across multiple agencies.
The People produced a 28-page Notice of Discovery, ten compliance reports, and dozens of rolling disclosures. Yet for more than a year after the March 11, 2024 Certificate of Compliance, no defense attorney raised a single discovery concern. During that period, defendants litigated CPL 190.50 issues, filed omnibus motions, engaged in two days of suppression hearings, substituted counsel multiple times, and sought adjournments—including those necessitated by Whyte's production from DOCCS—without ever suggesting that discovery was incomplete or deficient.
It was not until May 27—28, 2025, mere days before the May 30 jury trial date, that the defense first raised the issues now presented. Such timing is incompatible with the cooperative [*2]discovery framework established by Article 245 and instead suggests tactical maneuvering rather than substantive concern. The statutory scheme demands diligence and transparency—not a lastminute effort to manufacture a dismissal argument on the eve of trial. The Court will not allow discovery to be weaponized in this manner, jeopardizing the presence of hundreds of summoned jurors and derailing a long-scheduled trial without legitimate cause. The Court also notes, with no small measure of frustration, that approximately two hundred Tompkins County citizens had already been summoned for the May 30, 2025 jury trial—a civic burden wholly wasted by the filing of these eleventh-hour, meritless motions. Trial by ambush cannot be countenanced.

Standards Under Article 245 and People v. Bay

CPL Article 245 imposes a duty of due diligence, not perfection. In People v. Bay, 41 NY3d 200 (2023), the Court of Appeals articulated the controlling principles:
1. A Certificate of Compliance is valid if the People exercised due diligence.
2. The People must make reasonable inquiries of relevant agencies.
3. The inquiry is contextual, not item-by-item.
4. Promptly corrected inadvertent omissions do not invalidate a COC.
5. Strict liability is not the standard.
The Bay Court explained that the inquiry "is fundamentally case-specific, as with any question of reasonableness," and the statutory scheme does not set forth a strict liability standard or "require or anticipate a 'perfect prosecutor.'" Bay at 212. "Although the relevant factors for assessing due diligence may vary from case to case, courts should generally consider, among other things, the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery." Id.
The Third Department has reinforced this standard. In People v. Contompasis, 236 AD3d 138, 149 (3rd Dept 2025), the Appellate Division explained "the pivotal question before [the court] is whether the People exercised due diligence" in providing Article 245 disclosure. The Contompasis Court explained that "[a]lthough not defined within CPL article 245, 'due diligence' refers to 'a familiar and flexible standard that requires the People to make reasonable efforts to comply with statutory directives.'" Id. at 145, quoting, People v. Bay, 41 NY3d at 211. Bay makes clear that the Article 245 statutory inquiry is grounded in reasonable realism, not mechanical absolutism.
The Legislature has now explicitly codified this approach in recently amended CPL 245.50(5),[FN1]
making it a statutory command that courts evaluate:
• volume and complexity of discovery,
• an explanation for any lapse,
• whether the prosecution self-reported an omission,
• promptness of corrective action,
• whether the late item is trivial, duplicative, or insignificant, and
• whether any prejudice resulted.(emphasis added)

 This Court's recent precedents: Williams and 
 Bieneme
This Court's analysis is also guided by its two recent decisions addressing post amendment CPL Article 245 practice. In People v. Williams, 86 Misc 3d 1258(A), 2025 NY Slip Op. 51308(U) (Tompkins Cty. Ct. Aug. 7, 2025), this Court upheld the validity of the People's COC despite belated disclosures of crime-scene photographs and BWC audit logs. Applying the Bay framework, the Court found that "the volume of discovery produced was substantial, the explanation for the delayed disclosure was credible and promptly addressed, and the lapse was not due to bad faith or willful neglect." Id. at *2. The Court further emphasized that belated production does not vitiate a COC "made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of certain items, or a good faith position that the material in question was not discoverable." Id. at *2. Williams also addressed the proper scope of automatic discovery under the newly amended statute. Citing both legislative intent and practical necessity, the Court explained that Article 245 does not require the People to produce "every conceivable document or data point," particularly system-generated metadata with marginal or speculative relevance to the issues in dispute. Id. at *3. The August 7 amendments reinforce this principle by making clear that automatic discovery includes only materials "relevant to the subject matter of the case or to a witness's testimony." Williams, at *3. In short, Williams holds that discovery is an exercise in reasonableness—not perfection—and that minor lapses, once promptly cured, do not invalidate an otherwise diligent COC.
These same principles were reaffirmed in People v. Bieneme, 87 Misc 3d 1204(A), 2025 NY Slip Op. 51457(U) (Tompkins Cty. Ct. Sept. 15, 2025), where this Court again upheld the People's COC and readiness. The Court held unequivocally that "The People have acted in good faith and exercised due diligence, and their initial statement of readiness pursuant to CPL § 30.30 was valid when made and remains valid now." Id. at *2. Bieneme also underscored that Article 245 must be administered consistent with fundamental fairness and due process. As the Court stated, "Trial by ambush is incompatible with due process. Discovery is not intended to encompass all possible documents or system metadata that may exist." Id. at *2—3. The Court rejected any notion that Article 245 imposes strict liability for every delayed or omitted item, holding instead that defendants must show more than the theoretical possibility that additional material might exist. Id. at *3—4.
The same analysis that applied in Williams and Bieneme likewise foreclose defendants' claims here that any delayed or supplemental disclosure automatically invalidates the People's initial COCs or renders their readiness statements illusory. The record here reflects extensive, good-faith, and repeated disclosures by the prosecution, prompt remedial action upon identifying missing items, and no evidence of bad faith, gamesmanship, or intentional withholding. Defendants' theory rests on an expansive, strict-liability conception of CPL 245—namely, that the mere possibility of additional data, metadata, or documentation somewhere within a law enforcement repository necessarily defeats readiness. This Court rejected that argument in Williams and Bieneme, and it rejects it again here. Article 245 does not demand clairvoyance, omniscience, or the production of all system-generated metadata; it demands reasonable diligence and good-faith compliance. On this record, the People have unambiguously met those [*3]obligations.

Appellate Authority Confirming the Initial-COC Rule
The Fourth Department has now articulated a consistent and unambiguous rule: CPL § 30.30 dismissal is tied exclusively to the People's initial discovery obligations under CPL 245.20(1), and later disclosures and supplemental COCs do not retroactively invalidate a previously filed initial Certificate of Compliance. The leading case, People v. Walker, 232 AD3d 1214 (4th Dep. 2024), states the principle plainly. In reversing a dismissal premised on belated disclosures, the Court held that the People's failure to provide certain disciplinary records "[did] not render [the] original certificate of compliance improper." Id. at 1217.
The Fourth Department reaffirmed this rule in People v. Flowers, 234 AD3d 1347 (4th Dept. 2025). There, the defendant sought dismissal because the People disclosed grand jury transcripts only after filing the COC. The Court squarely rejected that argument, holding that the People had complied with their "initial discovery obligations under CPL article 245.20 'to the extent possible'" at the time the COC and SOR were filed. Id. at 1348, quoting People v. Geer, 224 AD3d 1353, 1354 (4th Dept. 2024). The Court added that "it is irrelevant for speedy trial purposes whether the People thereafter failed to exercise due diligence" in obtaining the transcripts, because such later issues may warrant discovery sanctions, not dismissal, under CPL 245.80. Id.
In People v. Radford, 237 AD3d 1511 (4th Dept. 2025), citing both Walker and Flowers, the Fourth Department repeated that while a failure to meet continuing obligations under CPL 245.60 may warrant sanctions, it "does not implicate speedy trial considerations under CPL §30.30." Id. at 1513.

Application to the Present Case
This Court has methodically scrutinized the voluminous CPL Article 245 disclosure record concerning Defendants Whyte and Marshall: the People disclosed extensive materials, filed their COCs based on the information then known and available, and promptly produced additional items when they surfaced.

The April 23, 2025 DEMS Audit and Self-Reporting
The Court credits, and adopts, the People's description of the April 23, 2025 DEMS audit. As set forth in Deputy District Attorney Bonavia's July 1, 2025 Opposition and July 29, 2025 Sur-Reply, the audit was a voluntary, self-initiated review undertaken without prompting by the defense or the Court, and was conducted as part of the prosecution's continuing effort to verify the accuracy of its Article 245 disclosures. The record establishes that the items identified during the audit consisted solely of administrative or technical materials—several created after the initial disclosure period, others attributable to system-level storage limitations—and that none had been previously known to or withheld by the People. Immediately upon discovering these matters, D.D.A. Bonavia notified defense counsel, produced the corrected materials, and explained the basis for each discrepancy. The Court finds that this conduct reflects the diligence, candor, and prompt self-correction required by Bay, Contompasis, and CPL 245.50(5), and that the April 23 audit therefore reinforces, rather than calls into question, the good-faith validity of the March 11, 2024 Certificate of Compliance. During the self-audit, D.D.A. Bonavia:
1. Personally reviewed each DEMS folder;
2. Identified administrative IPD entries created after the initial disclosure period;
3. Determined that the "phone extractions" folder appeared empty due to system file-size limits;
4. Discovered the earlier mistaken extraction of Marshall's phone;
5. Immediately self-reported all findings to defense counsel;
6. Produced thumb drives containing the full set of extraction data;
7. Explained the cause of each omission.
This conduct exemplifies the diligence and ethical rigor contemplated by Bay, Contompasis, Williams, Bieneme, and CPL 245.50(5). It demonstrates candor, accuracy, and prompt self-correction. Defendants' contrary characterizations are meritless.

The Mistaken Extraction of Marshall's Cellular Telephone
In late October 2023, CUPD mistakenly extracted data from defendant Marshall's cellular telephone, believing it to be the device for which co-defendant Edwards had signed a written consent form. CUPD Investigator Schweiger observed that the extracted phone's identifiers did not match the consent form and immediately alerted IPD Investigator Herz, who in turn immediately informed DDA Bonavia. Upon learning of the error, the prosecution made good faith and diligent inquiries and responded with scrupulous candor:
• The extraction was immediately halted;
• The exported data was sealed with evidence tape, segregated, and never accessed;[FN2]
• The error was contemporaneously documented;
• The People disclosed the mistake to defense counsel voluntarily and in detail.
When the People discovered that Marshall's cellular telephone had been mistakenly extracted without proper authority, they immediately ceased activity, refrained from accessing the contents, sealed the material, and promptly disclosed the error. The Deputy District Attorney's response was diligent and consistent with the highest ethical standards of prosecutorial practice.
Marshall's objection to prosecutorial access to the extraction applies equally to defense access. No party has ever had lawful access to the contents of Marshall's cell phone, and none shall be granted. The material is irrelevant to the People's theory of the case, unnecessary to any defense, and any suggestion of relevance is purely speculative. There is no statutory, constitutional, or evidentiary basis to release the Marshall cell phone extraction. The extraction shall remain:
• Physically sealed, and
• Legally sealed by Order of this Court.

 Supplemental IPD Entries
The supplemental police entries disclosed on April 23, 2025 were administrative in nature, created after the initial disclosure period, and not previously in the People's possession. Promptly corrected inadvertent omissions do not invalidate a COC.

Body-Worn Camera Audit Logs and Metadata
The defendants' demands for extensive BWC metadata and audit logs exceed the scope of [*4]Article 245. As this Court held in Williams, "BWC audit logs are not automatically discoverable insisting on the automatic disclosure of all metadata is contrary to the values of usefulness, reason, and efficiency underlying Article 245." And as reiterated in Bieneme, "Discovery is not intended to encompass all possible documents or system metadata that may exist." The Court therefore finds these demands unsupported by the statute and inconsistent with controlling precedent.

 Strict-Liability Theory Rejected
Defendants contend that any undelivered item—no matter how minor, duplicative, or newly created—automatically invalidates the March 11, 2024 COC. This theory is incompatible with: Bay, Contompasis, Williams, Bieneme, Radford, Flowers, Walker, the Legislature's 2025 Article 245 Amendments and the growing and nearly uniform chorus of post-August 7th trial and Appellate court decisions addressing Article 245 issues. The governing standard is diligence, not flawlessness.
Here, as in Williams and Bieneme, there is no showing of bad faith, willful neglect, or any attempt to "sandbag" the defense. Defendants instead advance the same strict-liability theory of discovery that has been explicitly rejected.
The Court finds, as a matter of both law and fact, that the People exercised due diligence in meeting their discovery obligations. The record demonstrates diligent, good-faith efforts across multiple agencies, substantial organization of voluminous digital material, and prompt correction of inadvertent omissions. Nothing in this record remotely suggests bad faith, concealment, or strategic delay. The defendants' contrary arguments are unsupported by the record.

 Conclusion
The Court finds that the People's March 11, 2024 Statement of Readiness was valid when made. The defendants' contention that supplemental disclosures in April and May 2025 rendered the initial readiness "illusory" is unsupported by the record.
Even assuming arguendo that the People's readiness was invalid (and it was not), the Court calculates that no more than 150 days are chargeable to the People—well below the 185- day threshold applicable to this felony indictment. The following periods are excluded under CPL §30.30(4):
• Omnibus motion practice, including briefing and decision-making;
• Suppression hearings conducted on two separate dates;
• CPL 190.50 proceedings;
• Attorney substitutions, including time necessary for new counsel to prepare;
• Adjournments relating to Whyte's production from DOCCS custody;
• Defense motions filed and litigated throughout 2024 and 2025.
The Court also notes:
• Defense counsel raised no discovery concerns for more than a year;
• The issues were first raised three days before the scheduled May 30, 2025 trial;
• Multiple adjournments were requested or consented to by defendants;
• Several adjournments were jointly requested for the Court to resolve extensive motions.
The Court will not reward strategic timing designed to manufacture CPL §30.30 claims.
Defendants suffered no prejudice whatsoever from any supplemental disclosures:
• All materials were disclosed well before the now-scheduled January 20, 2026 trial;
• None were exculpatory;
• Many were duplicative or administrative;
• Several were created after the initial COC;
• The People promptly self-corrected, documented, and disclosed everything identified during the April 23, 2025 audit.
Consequently, it is hereby,
ORDERED, defendants' motions to strike the People's Statements of Readiness are DENIED; and it is further
ORDERED, defendants' motions to strike the People's Certificates of Compliance are DENIED; and it is further
ORDERED, defendants' motions to dismiss the indictment pursuant to CPL §§ 245.50, 30.30, and 210.20(1)(g) are DENIED IN THEIR ENTIRETY; and it is further
ORDERED, that the mistaken October 2023 extraction of defendant Marshall's cellular telephone shall remain permanently sealed in both physical and digital form; that no party, agency, or representative shall access, review, copy, disseminate, or otherwise inspect the extracted data; and that the sealed material shall be maintained solely for chain-of-custody integrity and shall not be unsealed absent further Order of this Court upon a showing of compelling legal necessity; and it is further
ORDERED, this indictment is ready for jury trial which shall commence on January 20, 2026, at 9:00 a.m.; and it is further
ORDERED, the Sandoval hearings shall commence on December 16, 2025 at 2:30 p.m.
Dated: December 05, 2025
Ithaca, New York
Hon. Scott A. Miller
Tompkins County Court Judge

Footnotes

Footnote 1:CPL Art. 245 amendments, eff. August 7, 2025, "shall apply to all criminal actions pending on such date and all actions commenced on or after such date."

Footnote 2:The People expressly confirmed this in their July 1, 2025 Affirmation in Opposition, stating that "the police sealed the extraction with evidence tape. They 'unilaterally' sealed it the way one 'unilaterally' seals an envelope before mailing it." (Bonavia Affirmation in Opposition, July 1, 2025, at 9).