**Carmen DIAZ et al., Plaintiffs,**

v.

**Benjamin WARD et al., Defendants.**

**75 Civ. 1194–CSH.**

United States District Court,
S. D. New York.

Nov. 6, 1980.

David Rudenstine, Arthur Eisenberg, New York Civil Liberties Union, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Donald Sticklor, Asst. Atty. Gen., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

### HAIGHT, District Judge:

Plaintiffs in this class action are parolees under the criminal justice system of the State of New York, and all individuals residing in private living quarters with parolees. Alleging that the defendants, officials charged with the administration of the parole program, have violated their constitutional rights, plaintiffs pray for declaratory relief, and for compensatory and punitive damages. The nature of plaintiffs' claims is discussed in detail in this Court's opinion granting class certification and denying defendants' motion for judgment on the pleadings. 437 F.Supp. 678.

Following pre-trial discovery, the parties filed cross-motions for partial summary judgment. I referred those motions to the Hon. Nina Gershon, United States Magistrate, for report and recommendation. The motions addressed the constitutionality of defendants' policies in respect of searches by parole officers of parolees' residences, and visits by parole officers to such residences. Plaintiffs contend that a parole officer should obtain a warrant before conducting a search of a parolee's residence, or making a visit to the premises. Defendants contend that a warrant is not required in either circumstance.

In a comprehensive and scholarly opinion, Magistrate Gershon recommended:

" . . . that summary judgment be granted in favor of plaintiffs to the extent of declaring that, unless an established exception to the Fourth Amendment warrant requirement is applicable, a parole officer must secure a warrant prior to conducting a search of a parolee's residence and further declaring that, to the extent defendants' Policy Statement purports to authorize parole officers to conduct warrantless searches when none of the established exceptions apply, it is unconstitutional." Opinion at 25.

As to the question of home visits, the Magistrate recommended that summary judgment not be granted to either side, pending further development of the "parole officers' actual practices in home visits." *Id.* at 29. Magistrate Gershon perceived such factual development as necessary in order to determine "whether the entry into the home by a parole officer in itself constitutes a search requiring a warrant under the Fourth Amendment." *Id.* at 27.

Both parties appealed the Magistrate's recommendations.

■ I confirm the Magistrate's recommendation with respect to the requirement of a warrant before conducting a search of a parolee's residence. On that aspect of the

case, I adopt her reasoning as my own. In contending that parolees fall outside the protection of the Fourth Amendment, defendants place primary reliance upon *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), a Supreme Court decision rendered subsequent to this Court's ruling on defendants' dispositive motion. While there is broad language in *Greenholtz* which could be read to support defendants' perception of a parolee's limited constitutional rights, in point of fact *Greenholtz* considered an incarcerated prisoner's due process entitlements in respect of his parole release procedures. The Court, upholding Nebraska's parole release procedures against constitutional attack, distinguished parole release from parole revocation in these terms:

> "The fallacy in respondents' position is that parole *release* and parole *revocation* are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires. The parolees in *Morrissey* (and probationers in *Gagnon*) were at liberty and as such could 'be gainfully employed and [were] free to be with family and friends and to form the other enduring attachments of normal life.' 408 U.S., at 482 [92 S.Ct. at 2600, 33 L.Ed.2d 484]. The inmates here, on the other hand, are confined and thus subject to all of the necessary restraints that inhere in a prison." 422 U.S. at 9, 99 S.Ct. at 2105 (emphasis in original).

In the case at bar, the parolees have been released on parole. They are in consequence at liberty, and "free to be with family and friends and to form the other enduring attachments of normal life." Normal life includes home life. In my judgment, *Greenholtz* supports the present plaintiffs, rather than defendants. A search of a parolee's home has nothing to do with whether or not he will be released—he has already been released—but may trigger a revocation proceeding. In any event, there is nothing in *Greenholtz* which requires a holding that the homes of released parolees may be made the subject of warrantless searches. I reach the contrary conclusion, for the reasons well stated by Magistrate Gershon, and on the basis of the authorities she cites.

■ Turning now to the question of home visits, I see no need for a further factual development. Partial summary judgment on this issue will be entered in favor of the defendants. The parties agree that the parole officer performs the dual functions of providing rehabilitative services to parolees, and offering protection to the community. Magistrate Gershon considered that it was necessary to develop evidence on parole officers' actual practices in conducting home visits, in order to evaluate plaintiffs' contention that "to allow a warrantless 'visit' would create an exception which would gobble up the rule." But if a parole officer is clearly entitled in principle to visit a parolee's home without first obtaining a warrant from a judicial officer, then what has happened in the past is not so significant as how the implementation of that principle should perhaps be circumscribed in the future.

I entertain no doubt that parole officers must be free to pay home visits to parolees, in order to perform their dual function effectively; and that the obtaining of a "visit warrant" would obstruct those purposes in a manner not required by the Fourth Amendment. Plaintiffs argue that, in practical terms and effect, "searches" and "visits" are the same. I cannot agree. If I visit my friend's home, I sit in his living room and talk to him. He may offer me a drink; he may even invite me into the dining room, and feed me supper. If I search his home, I push him to one side, rummage through his closets, examine the contents of his bureau and desk draws, and peer under his bed. There is a common sense distinction between these activities, which parole officers and parolees are able to comprehend.

In performing a home visit, a parole officer may properly be limited by the parolee to one room of the residence, where the parole officer, on the basis of his observa-

tion of the parolee and conversation with him, may gather the information necessary to achieve the visit's limited purposes. Of course, the parolee may, if he wishes, expand the visit to other rooms of the residence; but he need not do so, and if he does not, the parolee revives the concept of the formal, Victorian "parlor," an uncomfortable room reserved for visitations of the vicar, and other intrusions. The Court's order granting partial summary judgment to defendants on this issue may contain, if plaintiffs so request, a provision that visits by parole officers to the homes of parolees and their families will be limited to the confines of one room, if the parolee or his family members so require.

The parties are directed to settle judgments in conformity with this opinion, on five (5) days' notice.

It is So Ordered.