**UNITED STATES of America,**
**Appellee,**

v.

**Burgess MASSEY, Defendant–**
**Appellant.**

**Docket No. 05–4829–CR.**

United States Court of Appeals,
Second Circuit.

Argued: May 19, 2006.

Decided: Aug. 22, 2006.

Christina Paglia Bischoff, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Katherine Polk Failla, Assistant United States Attorney, on the brief), New York, N.Y., for Appellee.

Isabelle Kirshner, Law Office of Isabelle Kirshner, Esq., New York, N.Y., for Defendant–Appellant.

Before MINER and POOLER, Circuit Judges, and RAKOFF, District Judge.*

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

RAKOFF, District Judge.

Found guilty by a jury of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1), defendant Massey was sentenced to 235 months of imprisonment. On appeal, Massey principally challenges the denial of his pre-trial motion to suppress the fruits of a search conducted by a New York State parole officer, as well as various aspects of his sentence. For the reasons that follow, we affirm.

Massey has several prior convictions. On April 24, 2003, as a condition of obtaining parole from his imprisonment for attempted assault, Massey signed a standard Certificate of Release to Parole Supervision, in which he agreed, inter alia, to "permit his parole officer to visit him at his residence and/or place of employment and [to] permit the search and inspection of his person, residence and property." N.Y. Comp.Codes R. & Regs. tit. 9, § 8003.2(d).

Following his release on parole, Massey lived at his mother's apartment in the Bronx. On July 10, 2003, New York Parole Officer Patricia Rojas came to the apartment, with other officers, and asked him to show her the bedroom that he occupied, which Massey did. While in the bedroom, Rojas noticed the handle of a machete sticking out from underneath a mattress. After retrieving the machete, Rojas conducted a search of the bedroom for additional weapons. Behind Massey's bureau she discovered a bag of ammunition and a cane sword. She then told Massey that because ammunition had been found, a search of the apartment beyond the bedroom would be conducted and that, if a gun were found, both he and his mother would be arrested. Massey responded by directing Rojas to the inside right pocket of a coat in a hallway closet, where Rojas found a revolver. In the outside pocket of the same coat, Rojas found between ten and eleven rounds of ammunition.

On the basis of this evidence, Massey was indicted for being a prior felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Because he previously had been convicted of three violent felonies, he was also subject to the enhanced penalties of § 924(e) that mandated a sentence of at least fifteen years and permitted a Guideline range well above that. He moved to suppress all evidence found in the apartment, including the machete, ammunition, cane sword, and firearm, but the district court, after an evidentiary hearing, denied the motion. Specifically, the district court found that Rojas' presence in Massey's bedroom was permissible; that the machete was in plain view; that its presence provided reasonable suspicion to conduct the further bedroom search that revealed the bag of ammunition and cane sword; and that the closet search was conducted with Massey's actual consent. *See United States v. Massey*, No. 03 Cr. 938(WHP), 2004 WL 1243531, at *3–*5 (S.D.N.Y. Jan. 21, 2004).

Massey then went to trial and was convicted of violating § 922(g). At sentencing, the district court, after finding that Massey was subject to the fifteen-year mandatory minimum sentence required by § 924(e), sentenced Massey to 235 months in prison, followed by five years of supervised release, which represented the low end of his Guideline range. This appeal followed.

Massey's principal argument is that Rojas' search exceeded the permissible bounds of a home visit and was therefore unreasonable. "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Samson v. California*, —— U.S. ——, ——, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006) (quoting *United*

*States v. Knights,* 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)).

■■■ A parolee's reasonable expectations of privacy are less than those of ordinary citizens, *see Knights,* 534 U.S. at 119–20, 122 S.Ct. 587; *United States v. Newton,* 369 F.3d 659, 665 (2d Cir.), *cert. denied,* 543 U.S. 947, 125 S.Ct. 371, 160 L.Ed.2d 262 (2004), and are even less so where, as here, the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer. *See generally Samson,* 126 S.Ct. at 2197–98, 2199. Conversely, the state has a legitimate interest in closely monitoring the activities of its parolees, *id.* at 2200–01, and a home visit is a "routine and appropriate element[ ] of supervising a convicted person," *United States v. Reyes,* 283 F.3d 446, 460 (2d Cir.2002).

Massey's argument that Officer Rojas' entrance into the bedroom violated a New York State-imposed restriction limiting home visits to one room of the residence is factually incorrect. Massey was living in his mother's apartment, and it was therefore reasonable for Officer Rojas, recognizing as much, to designate the bedroom assigned to him as the room she wished to visit. Immediately upon entering the apartment, Officer Rojas requested to see the bedroom and proceeded directly to it. For all practical purposes, it was the only "room" she visited until after she discovered the machete, the ammunition, and the sword.

Once there, she was fully entitled to seize the machete that, as the district court found, was in plain view. *See United States v. Reyes,* 283 F.3d at 468 ("Contraband that falls within the plain view of a probation officer who is justified [in] being in the place where the contraband is seen may properly be seized by the probation officer, if it is immediately apparent that the item is contraband with respect to the supervisee." (internal quotations omitted)). And, once she found the machete, Rojas had reasonable suspicion to conduct a further search for additional contraband, assuming *arguendo* that reasonable suspicion was even needed when Massey had already consented to such a search as a condition of obtaining parole. *See Samson,* 126 S.Ct. at 2196. In addition, the district court, reasonably crediting Rojas' testimony, expressly found that Massey consented at the time to the search of the hallway closet.

In short, by any relevant measure, Rojas' entire search was reasonable.

■■■ While Massey also complains of his sentence, the district court properly relied on the statutory elements of Massey's prior convictions in finding he had committed three prior violent felonies. *See* 18 U.S.C. § 924(e)(2)(B) (defining violent felony as, *inter alia,* "any crime punishable by imprisonment for a term exceeding one year ... that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another"). Nor was this an issue for the jury. *See Almendarez–Torres v. United States,* 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that fact of prior convictions need not be treated as an element of criminal offense); *United States v. Estrada,* 428 F.3d 387, 390 (2d Cir.2005) (affirming that Almendarez–Torres remains good law). Similarly, nothing in the record indicates the district court's sentence of 235 months, the low end of the Guideline range, was either procedurally or substantively unreasonable. *See United States v. Rattoballi,* 452 F.3d 127, 131–32 (2d Cir.2006).

Accordingly, the judgment of the district court is hereby affirmed in all respects.

MINER, Circuit Judge, concurring.

Because it seems to me that this case is on all fours with *Samson v. California,* ——

U.S. ——, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), I see no point in the majority's assessment and rejection of "Massey's argument that Office Rojas' entrance into the bedroom violated a New York State-imposed restriction limiting home visits to one room of the residence." Majority Op. at 179.

After *Samson*, we know that parolees, by virtue of their status, "[do] not have an expectation of privacy that society would recognize as legitimate," where they are given notice that they may be searched at any time for any reason. *Samson*, 126 S.Ct. at 2199. The "waiver" signed by Massey provides in relevant part: "I will permit my Parole Officer to visit my residence and/or place of employment[,] and I will permit the search and inspection of my person, residence and property." See N.Y. Comp.Codes R & Regs. tit. 9, § 8003.2(d). This consent to search is, for all practical purposes, indistinguishable from the "waiver" apparently signed in *Samson* in the form prescribed by California law.

The waiver in *Samson* provided that the parolee agreed " 'to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without search warrant and with or without cause.' " *Id.* at 2196 (quoting Cal.Penal Code Ann § 3067(a)). Massey's "waiver" gives him specific notice that he, his residence and his property are subject to search at any time for any reason, further diminishing his already "severely diminished expectation of privacy." *Id.* at 2199; *see People v. Huntley*, 43 N.Y.2d 175, 182–83, 401 N.Y.S.2d 31, 371 N.E.2d 794 (1977) (holding that this "waiver" grants to New York parole officers "the right to conduct searches rationally and substantially related to the performance of" their duties). Massey's claimed viola-

tion of his Fourth Amendment rights clearly can be rejected on this basis.

The "New York State-imposed restriction" to which the majority refers is found in the New York State Division of Parole's Policy and Procedure Manual, an internal document apparently adopted following the decision in *Diaz v. Ward*, 506 F.Supp. 226, 228–29 (S.D.N.Y.1980). The Parole Manual includes the following provisions:

A parole officer has the right to visit a releasee's residence. However, that releasee ... may limit the parole officer's visit to one room of that residence.

Where the officer wishes to view other portions of the residence for casework, verification or other reasons, the officer may do so only with the consent of the releasee....

I am not as sure as the majority that "it was ... reasonable for Officer Rojas ... to designate the bedroom assigned to [Massey] as the room she wished to visit." Majority Op. at 179. There is no evidence that Massey failed to make use of other rooms in his mother's apartment, and his residence may well have consisted of the entire apartment. Additionally, the Parole Manual is not a model of clarity. It speaks of the right of the parolee to "limit the parole officer's visit to one room of the residence." Must the officer warn the parolee of that right, or is the parolee presumed to know it? As to other portions of the residence, the Manual allows views of those areas "only with the consent of the [parolee]." Massey was not offered any alternative—Officer Rojas directed him in the first instance to show his bedroom, and he complied.

The problematical aspects of this case, which the majority unnecessarily proceeds to resolve, are easily avoided. Federal law teaches that "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement

officer would not offend the Fourth Amendment." *Samson,* 126 S.Ct. at 2196. The conditions of release are those provided by Massey's "waiver." *See* N.Y. Comp. Codes R. & Regs. tit. 9, § 8003.2 (establishing the "conditions of release"). That the Parole Manual "exceeds" constitutional requirements is not a limiting factor for us in resolving the Fourth Amendment issue here. *See United States v. Newton,* 369 F.3d 659, 666 (2d Cir.2004) (referring to certain portions of the New York Parole Manual as "exceed[ing]" constitutional requirements); *United States v. Pforzheimer,* 826 F.2d 200, 203–04 (2d Cir.1987) (holding that evidence seized in violation of state law is admissible in federal court so long as in conformity with federal law).

In view of the foregoing, there is no need, in resolving the Fourth Amendment issue in this case, to review restrictions found in the Parole Manual. To the extent that the majority is of the opinion that there is, I am constrained to note my disagreement. In all other respects, I concur with the majority opinion and with the determination to affirm the judgment of the District Court.