**UNITED STATES of America,**
**Appellee,**

v.

**John WATTS, Defendant–Appellant.**

**No. 06–5299–cr.**

United States Court of Appeals,
Second Circuit.

Dec. 3, 2008.

See also, 2005 WL 2738948.

40

Julia Pamela Heit, New York, NY, for Appellant.

Jessica A. Masella, Assistant United States Attorney (United States Attorney Michael J. Garcia, and Assistant United States Attorney Jonathan S. Kolodner, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Appellee.

Present: JOSÉ A. CABRANES, CHESTER J. STRAUB and ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

**UPON CONSIDERATION WHERE-OF, IT IS HEREBY ORDERED, AD-JUDGED, AND DECREED** that the judgment of the District Court is hereby **AFFIRMED.**

 Defendant John Watts appeals from a November 14, 2006 judgment of the District Court convicting him, after a jury trial, of multiple counts of firearm and drug possession, in violation of 18 U.S.C. § 922(g)(1), and 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), and sentencing him to a term of 210 months' imprisonment, followed by a term of three years' supervised release, and a mandatory special assessment of $400. We assume the parties' familiarity with the underlying facts and procedural history of the case.

 Defendant offers two arguments on appeal. First, defendant argues that his sentence was substantively unreasonable because the District Court did not adequately weigh defendant's chronic medical condition in assigning a prison sentence.[1]

---

1. Defendant states explicitly in his brief that "Judge Buchwald complied with the procedural requirements of *Gall [v. United States,* —— U.S. ——, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)]." (Appellant's Br. 25.) However, two pages later, defendant posits that "[t]here should [have been] an exploration ( [*i.e.,*] a hearing) concerning the type of care available to a seriously ill inmate." (*Id.* at 27.) To the extent that defendant is advancing an argument of procedural unreasonableness, we find no basis in the record to overturn the District Court's judgment of conviction for any procedural defect. Although defendant had ample

time to do so during more than ten months between conviction and sentencing, he never requested such a hearing before sentencing. And when the District Court asked whether there was "any reason that sentence ought not be imposed at this time," defendant's counsel replied, "No, your Honor." The District Court did not err in declining to hold such a hearing *sua sponte.* Moreover, the transcript of the sentencing hearing reveals that the District Court heard defendant's arguments regarding his medical condition and concluded that the Bureau of Prisons could provide a "reasonable level" of medical care

We review challenges to the reasonableness of a sentence under an abuse-of-discretion standard. *See Gall v. United States,* — U.S. —, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); *United States v. Verkhoglyad,* 516 F.3d 122, 127 (2d Cir. 2008). Applying this very deferential standard to this case, we conclude that defendant's sentence was within "the range of permissible decisions." *Sims v. Blot,* 534 F.3d 117, 132 (2d Cir.2008) (citation omitted). The District Court's sentence was at the low end of the Guidelines range, which spanned between 210 and 262 months. *See United States v. Fernandez,* 443 F.3d 19, 27 (2d Cir.2006) ("We recognize that in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). The lengthy duration of defendant's sentence was principally a result of his multiple prior convictions for drug offenses, witness intimidation and assault, weapons possession, and one instance of driving an all-terrain vehicle on a public street and, in an attempt to evade pursuing police, through a crowded park. As the District Court noted during the sentencing hearing, defendant committed some or all of these crimes while suffering from the same medical condition that forms the basis of his request for a shorter prison term. Upon reviewing materials made available by the Administrative Office of the United States Courts, the District Court found that defendant could receive medical treatment for his condition while in federal custody. Defendant argued categorically and vigorously before the District Court and on appeal that the

Bureau of Prisons does not perform organ transplants. As the District Court pointed out at sentencing without objection from defendant or his counsel, however, it is not clear from the record that federal prison inmates do not have access to organ transplants where necessary and feasible, nor has the defendant pointed to evidence in the record to support that proposition. Under these circumstances, we cannot conclude that the District Court's sentencing determinations were substantively unreasonable or constituted an abuse of discretion.

■ Defendant's second argument on appeal is that the District Court should have suppressed the drugs and handgun discovered during a parole search of defendant's bedroom in October 2004, despite defendant's consent to warrantless searches as a condition of his New York state parole. "We review *de novo* the legal issues presented by a motion to suppress." *United States v. Newton,* 369 F.3d 659, 664 (2d Cir.2004). The District Court properly applied a balancing test to determine whether the parole search was reasonable under the Fourth Amendment. *See generally United States v. Massey,* 461 F.3d 177, 178 (2d Cir.2006) ("Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." (citations and internal quotation marks omitted)). The District Court compared defendant's diminished privacy expectations, *see Newton,* 369 F.3d at 665 (noting that parolees may

---

for defendant. "The judge … simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range." *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 2469, 168 L.Ed.2d 203 (2007) (holding that 18 U.S.C. § 3553(c) requires a sentenc-

ing court to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority").

be subject to more intrusive searches than the general public), against the state's legitimate interests in monitoring parolees, *see id.* at 666 (explaining reasons for searching parolees), *People v. Huntley,* 43 N.Y.2d 175, 183, 401 N.Y.S.2d 31, 371 N.E.2d 794 (1977) (interpreting New York parole agreements to incorporate a requirement that parole searches be "rationally and substantially related to the performance of [the parole officer's] duty"). In this case, the District Court concluded, based on an affidavit from a parole officer, that the October 2004 search of defendant's residence was substantially connected to defendant's arrest in June 2004 for dealing drugs. Under these circum-

stances, the District Court properly denied defendant's motion to suppress.[2]

On a related point, defendant asserts that the District Court improperly refused to hold a suppression hearing regarding the evidence obtained in the October 2004 search. We disagree. Defendant has not established any "contested issues of fact going to the validity of the search." *United States v. Watson,* 404 F.3d 163, 167 (2d Cir.2005) (*quoting United States v. Pena,* 961 F.2d 333, 339 (2d Cir.1992)). Lacking "sufficiently definite, specific, detailed, and nonconjectural" affidavits or other evidence creating doubt as to the validity of this search, *Watson,* 404 F.3d at 167 (*quot-*

---

**2.** We save for another day and another case the question posed by the government-whether *Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), supplants our prior cases in which we assessed the "reasonableness" of a parole search under *People v. Huntley,* 43 N.Y.2d 175, 401 N.Y.S.2d 31, 371 N.E.2d 794 (1977). In *Samson,* the Supreme Court held that a "suspicionless" search of parolee did not violate the Fourth Amendment where the parolee had consented to be searched "at any time of the day or night, with or without a search warrant and with or without cause" as a condition of his parole. *Id.* at 846, 126 S.Ct. 2193. The Supreme Court reasoned that, having agreed to "anytime, anywhere" searches, which were authorized by a California statute, a parolee could not claim a legitimate expectation of privacy that would exceed the state's reasonable interest in monitoring parolees for recidivism. *See id.* at 852, 126 S.Ct. 2193 (noting that "a clear and unambiguous search condition significantly diminishe[s] [a defendant's] reasonable expectation of privacy" (internal quotation marks omitted)).

In this case, the terms of defendant's parole agreement were taken from a New York statute that did not explicitly authorize "anytime, anywhere" searches. *See* N.Y. Comp.Codes R. & Regs. tit. 9, § 8003.2(d) (requiring parolee to "permit his parole officer to visit him at his residence and/or place of employment and [to] permit the search and inspection of his person, residence and property"). Moreover, unlike California, New York requires that pa-

role searches conducted under New York's sentencing regimes be "rationally and substantially related to the performance of [the parole officer's] duty." *Huntley,* 43 N.Y.2d at 183, 401 N.Y.S.2d 31, 371 N.E.2d 794 (applying both the Fourth Amendment and Article I, Section 12 of the New York Constitution); *see also id.* at 182, 401 N.Y.S.2d 31, 371 N.E.2d 794 (stating that a parole agreement reached under the applicable New York statute "is not to be taken as an unrestricted consent to any and all searches whatsoever or as a blanket waiver of all constitutional rights to be secure from unreasonable searches and seizures"). Therefore, the scope of defendant's consent in this parole agreement appears narrower than-and factually distinct from-the scope of the parole agreement in *Samson.* *But see United States v. Massey,* 461 F.3d 177, 180 (2d Cir. 2006) (Miner, J., concurring) ("Th[e] [New York] consent to search is, for all practical purposes, indistinguishable from the 'waiver' apparently signed in *Samson* in the form prescribed by California law.").

Nonetheless, having determined that the search in this case satisfied the requirements of *Huntley* (authorizing parole searches where the search was "rationally and substantially related" to the parole officer's duty), the search would have also satisfied the lower bar imposed in *Samson* (upholding "suspicionless" searches where parolee consented "anytime, anywhere" searches). We therefore save any further analysis for a case where a distinction between *Huntley* and *Samson* would make a difference.

*ing Pena*, 961 F.2d at 339), the District Court properly denied defendant's request for a suppression hearing.

For the foregoing reasons, we **AFFIRM** the judgment of the District Court.