THE PEOPLE OF THE STATE OF NEW YORK ex rel. RAYMOND WATSON, by JILL ANN JAROFF, Appellant, v COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF CORRECTION et al., Respondents.

First Department, July 27, 1989

## APPEARANCES OF COUNSEL

*Jill Ann Jaroff* of counsel *(Thomas M. O'Brien* with her on the brief; *Robert M. Baum,* attorney), for appellant.

*Brian T. McGovern* of counsel *(Robert Abrams, Attorney-General,* attorney), for respondents.

## OPINION OF THE COURT

RUBIN, J.

Petitioner Raymond Watson was released to parole supervision on June 7, 1988 with a maximum date of June 15, 1999. He was rearrested on December 2, 1988 on a charge of criminal possession of a controlled substance in the third degree and criminal facilitation in the fourth degree. He informed his parole officer of this arrest on December 7, 1988.

As a condition of his parole, petitioner was required to "seek, obtain and maintain employment". It is apparent from the transcript of the preliminary revocation hearing held pursuant to Executive Law § 259-i (3) (c) that a disagreement arose between petitioner and Senior Parole Officer Marsha Willner regarding the propriety of his obtaining employment through the auspices of Free At Last, an organization alleged to have been found to employ intimidation tactics to obtain employment at construction sites for its members. The dispute led petitioner to institute a civil action in Federal court against Senior Parole Officer Willner and Parole Officer Steven Baker. Petitioner testified that, at a December 7, 1988 meeting with Baker, he had requested a leave of absence from an employment program to concentrate on his legal work but was informed the following week that it would not be permitted. At the December 14, 1988 meeting, he was also given a form containing three "special conditions of release to parole supervision" which recited: "(1) I will keep my scheduled appointment with the Division's Employment Program, Employment Counselor *[sic]* (P.O. Lerner) on 12/21/88 at 9:30 a.m. (2) I will keep all follow-up appointment *[sic]* as instructed by P.O. Lerner (Division's Employment Program). (3) I will seek and retain employment as instructed by P.O. Baker on 12/14/88." A notation on the document indicates that petitioner refused to sign it.

Petitioner did not keep his scheduled appointment on December 21, 1988 at 9:30 A.M. The record of the preliminary revocation hearing discloses that he did not report to the office until approximately 7:15 P.M. that evening, at which point according to the testimony of Senior Parole Officer Willner, he was seized by 4 or 5 parole officers who immediately took him into custody and handcuffed him. Petitioner testified, and respondent does not deny, that he was also placed in leg shackles. Only after he was thus restrained did Parole Officer Baker question him concerning his failure to keep the appointment scheduled for 9:30 A.M. that same day. Baker did not testify at the hearing. However, it is undisputed that petitioner remained silent and refused to give any explanation for the failure to report as scheduled. The Hearing Officer found that there was probable cause to sustain charge number 4 of the five charges brought against petitioner. This charge alleges that petitioner violated the conditions of his parole by failing to answer the questions directed to him by Parole Officer Baker as required by rule number 5 of the rules of supervision, which provides: "I will reply promptly, fully and truthfully to any inquiry of or any communication by my Parole Officer or other representative of the Division of Parole." The Hearing Officer did not address two charges arising out of petitioner's December 2nd arrest for possession of a controlled substance but did find, with respect to charges relating to his employment and the missed December 21st appointment, that in the absence of testimony from Parole Officer Baker the Division of Parole failed to establish a violation of a condition of petitioner's parole "in an important respect" (Executive Law § 259-i [3] [a] [i]; [c] [vi]).

The parties have framed the issue upon appeal in terms of petitioner's right, as a parolee, to remain silent under the circumstances of his interrogation by Parole Officer Baker. In our view, however, the issue is whether respondent agency has observed the procedural requirements set forth in section 259-i of the Executive Law with respect to revocation of parole.

Subdivision (3) of section 259-i states, in material part:

"Revocation of parole and conditional release.

"(a) (i) If the parole officer having charge of a paroled or conditionally released person or a prisoner received under the uniform act for out-of-state parolee supervision shall have reasonable cause to believe that such person has lapsed into criminal ways or company, or has violated one or more

conditions of his parole, such parole officer shall report such fact to a member of the board of parole, or to any officer of the division designated by the board, and thereupon a warrant may be issued for the retaking of such person and for his temporary detention in accordance with rules of the board."

A fair reading of this provision requires that, at a minimum, there exists a valid ground for taking the parolee back into custody. Thereafter, within 15 days, the agency is required to establish probable cause to believe that the parolee "has violated one or more conditions of his release in an important respect" at a preliminary hearing or to restore him to supervision (Executive Law § 259-i [3] [c] [vi], [vii]). In our opinion, the showing of probable cause pursuant to section 259-i (3) (c) (vi) does not relieve respondent Division of Parole of the burden to demonstrate a basis for the issuance of a warrant in the first instance pursuant to subdivision (3) (a) (i). The act comprising probable cause (remaining silent in response to the parole officer's questioning) cannot serve as a predicate for detention in that it occurred after petitioner was already in custody, handcuffed and shackled to a chair.

While this court recognizes the necessity for latitude in the operation of the Division of Parole, the diminished constitutional protection which is extended to the parolee heightens the importance of compliance with statutory procedures. As this court observed in *People ex rel. King v New York State Bd. of Parole* (65 AD2d 465, 468), "The revocation process involves a deprivation of a conditional liberty and, as such, the procedural protections afforded must be flexible in consonance with the demands of the particular situation".

The flexibility of the courts' approach to the area of procedural due process has led to some uncertainty regarding the extent to which constitutional protections extend to parole revocation proceedings. The exclusionary rule has been the subject of considerable comment. It generally bars the introduction of illegally seized evidence in parole revocation hearings *(People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76), but a warrantless search conducted by a parole officer acting pursuant to his duty of supervision does not constitute an illegal search *(People v Huntley,* 43 NY2d 175). In addition, we have held that although a parolee may have been subjected to an illegal search by a police officer, his admission to his parole officer regarding the possession of narcotics was sufficiently removed from the illegal search that, under the doctrine of attenuation, "it was purged of the

primary taint and therefore admissible against the parolee *(Brown v Illinois,* 422 US 590)" *(People ex rel. King v New York State Bd. of Parole, supra,* at 467; *but see, People ex rel. Jones v New York State Bd. of Parole,* 76 AD2d 782).

Statements made to a parole officer are generally admissible in revocation proceedings, even where they constitute admissions regarding a crime for which the parolee has been arrested and for whom counsel has been appointed *(Matter of Utsey v New York State Bd. of Parole,* 89 AD2d 965). There is no requirement that counsel be present during questioning *(People ex rel. Maiello v New York State Bd. of Parole,* 65 NY2d 145) even when interrogation takes place in a custodial setting without provision of *Miranda* warnings *(People v Ronald W.,* 24 NY2d 732), although the same statements are not admissible in a criminal proceeding *(People v English,* 73 NY2d 20; *People v Parker,* 57 NY2d 815, *affg* 82 AD2d 661).

The matter under review also illustrates the uncertainty surrounding the extent to which constitutional protections apply to the parole revocation process. The parties sharply dispute whether petitioner had the right to remain silent during his custodial interrogation by his parole officer. The Court of Appeals in *People v English (supra),* while distinguishing the role of a parole officer performing a parole supervision function from his role as a law enforcement officer, did not indicate that custodial interrogation conducted in the course of parole supervision requires observation of the rule against self-incrimination.

Given the difficulty in assessing the application of constitutional safeguards in the context of parole revocation, it is appropriate to regard the procedural requirements contained in the statute as representing the minimum procedural due process which must be afforded to the parolee. A similar requirement was imposed in the case of *Sharp v Speir* (4 Hill 76 [1843]) to afford protection to the owner of property subject to an administrative taking. The principle has no lesser application to an administrative proceeding to deprive a person of his liberty, notwithstanding the characterization of that liberty as "conditional" *(People ex rel. King v New York State Bd. of Parole, supra,* at 468).

Respondent Division of Parole has not demonstrated that, at the time petitioner was placed in custody, there existed any reason to believe that he was in violation of a condition of his release to parole supervision in an important respect. The

Hearing Officer found only that the refusal to answer questions put to petitioner by his parole officer constituted probable cause to believe a condition of parole had been violated. As pointed out above, however, that finding cannot serve as a predicate for petitioner's detention since the violation occurred after petitioner had already been taken into custody. Moreover, the Hearing Officer specifically found that the Division of Parole had failed to present sufficient evidence to establish that petitioner's failure to appear for his interview, as scheduled, represented "a violation in an important respect" of a condition of his parole. Therefore, the agency has failed to substantiate any ground for the issuance of a warrant for petitioner's detention pursuant to Executive Law § 259-i (3) (a) (i).

Upon an application following a preliminary hearing, the court's power of review is limited to determining whether the evidence was sufficient to support the Hearing Officer's determination and, having established that it was, deciding whether the required procedural rules were followed *(People ex rel. Wallace v State of New York,* 67 AD2d 1093). We conclude that the requisite procedure was not followed and that petitioner must therefore be restored to parole.

One final point deserves mention, however. The testimony given by Senior Parole Officer Willner with respect to the issuance of the warrant is inconsistent with the case summary prepared by Parole Officer Baker and countersigned by Senior Parole Officer Willner. The case summary states, "Based upon the subjects refusal to respond concerning his failure to keep his appointment for employment as well as information obtained concerning his arrest it was decided a warrant be issued." However, in her testimony at the preliminary hearing, Willner admitted that the warrant had already been issued prior to petitioner's arrival. To make matters worse, an affidavit by respondents' counsel submitted in opposition to the habeas corpus application states that he "was declared delinquent on December 2, 1988, for failing to report for an employment interviewed *[sic]* on that date, and other parole violations." While the "Violation of Release Report" dated December 21, 1988 indicates a "delinquency date" of December 2, 1988, there is no other mention in the record of any failure to attend a meeting on that occasion. Nor does the record contain any evidence to suggest that petitioner had "absconded from supervision" and was thus delinquent within the meaning of Executive Law § 259-i (3) (i). The only signifi-

cant event associated with December 2nd is petitioner's arrest for possession of a controlled substance. Given these discrepancies, it cannot be determined, upon the basis of the record before us, which event or events may have prompted the issuance of a parole violation warrant or when that warrant was issued. It is clear, however, that the only charge found by the Hearing Officer to be supported by probable cause was not a sufficient predicate for petitioner's detention.

Accordingly, judgment of the Supreme Court, Bronx County (Burton G. Hecht, J.), entered March 6, 1989, which denied petitioner's habeas corpus application to vacate a parole violation warrant and release him from custody, should be reversed on the law, without costs, petition granted and petitioner restored to parole under the conditions heretofore in effect.

SULLIVAN, J. P., MILONAS, ROSENBERGER and ELLERIN, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on or about March 6, 1989, unanimously reversed, on the law, without costs and without disbursements, the petition granted and petitioner restored to parole under the conditions heretofore in effect.