OPINION OF THE COURT
Margaret L. Clancy, J.
On March 26, 1996, petitioner pleaded guilty to manslaughter in the first degree. He was sentenced to an indeterminate term of 10 to 20 years in prison on May 6, 1996. Petitioner was released to parole supervision on January 30, 2007, and his parole was revoked on March 12, 2008 following his guilty plea to a parole violation. Petitioner now moves by writ of habeas corpus for an order vacating parole revocation warrant No. 481853 and releasing him to parole supervision. For the following reasons, petitioner’s application is denied.
On January 17, 2008, less than a year after petitioner was released to parole supervision, he was discovered in possession of a plastic bottle of what appeared to be urine during a visit to the parole office and was arrested. Petitioner’s parole officer believed that petitioner had another person’s urine in an attempt to pass a drug test that was scheduled for that visit. Petitioner’s arrest occurred prior to him being declared delinquent with respect to his parole obligations and prior to the issuance of any warrant. Parole revocation warrant No. 481853 was executed later that day. A preliminary hearing was held on January 25, 2008, after which a probable cause determination was made.
The violation of release report alleged three parole violations. At the preliminary hearing, however, the respondent Division elected to proceed only on the third charge, which alleged that petitioner violated rule No. 8 of the conditions of his release on January 17, 2008, by being “in possession of a plastic bottle filled with urine in an effort to provide as a false sample to be *928 submitted to deceive writer during urine test.”* Rule No. 8 of the conditions of release to parole supervision, by which petitioner agreed to abide, provided that “I will not behave in such manner as to violate the provisions of any law to which I am subject which provide for a penalty of imprisonment nor will my behavior threaten the safety or well-being of myself or others.”
At the preliminary hearing, counsel for petitioner moved to dismiss the charge for facial insufficiency in that the conduct, as alleged, did not make out a violation of any provision of law. The hearing officer overruled the objection and noted that the Division of Parole received a memorandum from counsel’s office instructing it to use rule No. 8 in this case.
At the hearing, Parole Officer Emile Blackman testified that he asked petitioner to submit a urine sample for drug testing during a scheduled office visit. Officer Blackman testified that petitioner appeared nervous, was fidgeting as if he was trying to prevent something from falling, and was acting suspiciously by turning his body to block the officer’s direct view of his groin area. When he was asked to empty his pants pockets, the officer saw petitioner attempt to place a plastic bottle, containing what appeared to be urine, into his jacket pocket. When Officer Black-man picked up the jacket, the bottle fell to the floor. Officer Blackman then placed petitioner in custody and began preparing the charges. The officer asked petitioner if it was his urine, and he responded that it was not and that he got it from one of his male friends. The contents of the bottle were never tested. The hearing officer made a finding of probable cause based on this record.
A final revocation hearing was held on March 12, 2008, at which petitioner pleaded guilty to the curfew violation to cover all the charges. Charges two and three were withdrawn, with prejudice, by the Division. Following the plea, the Division imposed a delinquency time assessment of 18 months.
Petitioner now argues that the probable cause finding after the preliminary hearing was improper and based on insufficient evidence. Specifically, petitioner argues that, even if the evidence is deemed sufficient to establish probable cause as to the specific conduct alleged, or even if the court were to accept the *929 factual allegations as true and infer a deceitful intent, the language of the charge alleging a rule No. 8 violation remains insufficient in that it does not allege any criminal conduct that is punishable by imprisonment or that threatened the safety of petitioner or others. Petitioner also argues that his arrest and custody were unlawful in that parole officers do not have the authority to make warrantless arrests for parole violations. In response, the Division maintains that whether or not the arrest was authorized has no effect on the validity of the warrant or the subsequent revocation proceedings. For the following reasons, petitioner’s application is denied.
First and foremost, it is well settled that any challenge to a preliminary parole revocation hearing is rendered moot by the final parole revocation determination. (People ex rel. Coriano v Warden, Riker’s Is., 50 AD3d 596 [1st Dept 2008], citing People ex rel. McCummings v DeAngelo, 259 AD2d 794 [3d Dept 1999] [notice and timeliness of preliminary hearing], lv denied 93 NY2d 810 [1999]; People ex rel. Falcon v Warden of Rikers Is. Correctional Facility, 25 AD3d 500 [1st Dept 2006] [challenge to preliminary hearing determination]; People ex rel. Ciccarelli v Saxton, 23 AD3d 1095 [4th Dept 2005] [challenge to procedures employed at preliminary hearing], lv denied 6 NY3d 708 [2006]; People ex rel. David v New York State Div. of Parole, 12 AD3d 963 [3d Dept 2004] [rejecting challenge to basis for parole violation at preliminary hearing]; People ex rel. Chavis v McCoy, 236 AD2d 892 [4th Dept 1997] [rejecting challenge to propriety of preliminary hearing when parole was revoked after guilty plea].) Upon finding that petitioner violated a condition of his release following his guilty plea to the curfew violation, any issue concerning the sufficiency of the evidence at the preliminary hearing was waived by petitioner and subsumed by the revocation of parole. (People ex rel. McCummings, 259 AD2d at 795; People ex rel. Chavis, 236 AD2d at 892; see People ex rel. Frett v Warden of Rikers Is. Correctional Facility, 25 AD3d 472 [1st Dept 2006].)
Moreover, while the court finds, and the respondent concedes, that petitioner was unlawfully arrested by his parole officer, this alone does not warrant the dismissal of the parole revocation charges. Executive Law § 259-i (3) (a) (i) provides that if a parole officer has reasonable cause to believe that a parolee has violated one or more conditions of his parole, the officer shall “report [this belief] to a member of the board of parole, or to any officer of the division designated by the board, and there *930 upon a warrant may be issued for the retaking of [the parolee] and for his temporary detention in accordance with the rules of the board.” Title 9 of the New York Codes, Rules and Regulations similarly provides that a parole officer who has reasonable cause to believe that a parolee has violated the conditions of his release in an important respect “shall report such fact to a member of the board or a designated officer.” (9 NYCRR 8004.2 [a].) The parole regulations further provide that “[t]he member or designated officer may issue a warrant for the retaking and temporary detention of a [parolee], provided that the designated officer issuing the warrant shall not also be the officer recommending issuance of the warrant.” (9 NYCRR 8004.2 [b].)
In analyzing the language of the Executive Law, the legislative history and its predecessor statute, the New York Court of Appeals in People v Bratton (8 NY3d 637, 641 [2007]) held that a parole officer is without authority to make a warrantless arrest for a parole violation, even if the violation is committed in his presence. Bratton, however, involved a criminal prosecution for resisting arrest under Penal Law § 205.30, which requires, as an essential element, that the arrest be authorized. Although the Bratton Court held that a resisting arrest charge could not stand where it was based on an unauthorized warrantless arrest by a parole officer, there is nothing in the Bratton decision that would suggest that the remedy for a warrantless arrest in the parole revocation context is the dismissal of the revocation proceeding and the restoration to parole. Moreover, while there is no statutory, regulatory, or decisional law that sets forth such a drastic remedy, an analysis of the few relevant cases in this area, and cases dealing with other statutory violations, strongly suggests that dismissal would not be appropriate in this case.
In People v Dyla (142 AD2d 423 [2d Dept 1988], lv denied 74 NY2d 808 [1989]), the Second Department faced the question of whether the exclusionary rule was applicable to a violation of the Executive Law’s warrant requirement in the context of a suppression motion in a criminal prosecution. The defendant in Dyla was arrested by his parole officer during a scheduled office visit. Although the parole officer did not have a warrant for the arrest, he had probable cause to believe that the defendant violated a condition of his parole by not notifying the parole officer of his contact with the police and subsequently lying about it. The defendant then voluntarily accompanied two detectives, who had been informed of the scheduled office visit, to police headquarters to be questioned about a homicide, during which *931 he made incriminating statements that were admitted against him at trial.
In affirming the murder conviction, the Second Department in Dyla held that the warrant requirement in the Executive Law was a statutory right and a purely technical requirement that did not implicate any constitutionally protected rights, and that the statements would not be suppressed where the claimed violation was not of a constitutional dimension. (Dyla, 142 AD2d 423, 433-434, 439 [1988]; accord People v Lopez, 288 AD2d 70, 71 [1st Dept 2001], lv denied 97 NY2d 706 [2002], citing Dyla, supra.) In reaching this conclusion, the Dyla Court specifically held that Executive Law § 259-i (3) (a) (i) is “more in the nature of a procedural or ‘housekeeping’ rule than a requirement designed to protect individual liberty.” (Dyla, 142 AD2d at 441.) It is neither jurisdictional nor affects a substantial right, and there is “no rule of constitutional law which requires that a warrant must be issued prior to the arrest of a parolee known to have committed a parole violation.” (Dyla, 142 AD2d at 440.)
Other courts have similarly found that statutory violations not implicating constitutionally protected rights do not require suppression of evidence or dismissal of the underlying proceedings. In People v Patterson (78 NY2d 711 [1991]), the defendant argued that the prosecutor’s use of a picture in a photo array required suppression of his identification because the picture was from another criminal proceeding that ended in defendant’s favor and should have been sealed pursuant to CPL 160.50. Although the photo was retained in violation of CPL 160.50, the New York Court of Appeals held that suppression was not warranted because the violation did not infringe upon any constitutional right, did not implicate fundamental constitutional interests or considerations, had no bearing on the reliability of the identification process, and was not relevant to the determination of guilt or innocence. (Patterson, 78 NY2d at 717-718.)
Matter of Dondi (63 NY2d 331 [1984]) involved an attorney disciplinary proceeding in which the Grievance Committee unlawfully obtained the records of a criminal matter that had been sealed pursuant to CPL 160.50 and used the information in preparing and prosecuting a case against the attorney. While the Court acknowledged that the attorney’s rights were violated by the improper access to sealed records, it held that this violation, without more, would not justify dismissal of the complaint against him. (Dondi, 63 NY2d at 339; see also Patterson, 78 NY2d at 718 n 2, citing Dondi, supra.) On the facts before it, *932 however, the Court held that the statutory violation, in conjunction with the attorney’s previously unblemished record, his contrition and cooperation during the proceedings, and the fact that the proceedings spanned over nine years, warranted the dismissal of the complaint with prejudice. (Dondi, 63 NY2d at 339-340.)
And in Matter of Emilio M. (37 NY2d 173 [1975]), a police officer who arrested a juvenile defendant failed to immediately notify the juvenile’s parent that he was taken into custody, as was required by section 724 (a) of the Family Court Act. Defendant argued that this violation, by not calling his mother until he was brought to the precinct, required the suppression of the statements he made prior to, and after, his mother’s arrival at the precinct. The Family Court suppressed the first statement but denied suppression of the second statement made after the mother’s arrival. The Appellate Division reversed on the grounds that there was such noncompliance with the Family Court Act that suppression of both statements was warranted. In reversing both the Appellate Division and the Family Court, the Court of Appeals noted that the facts did not constitute such noncompliance so as to warrant suppression. Under the circumstances presented, the Court found that there was compliance with the statutory mandate in that there was a reasonable justification for the delay in calling defendant’s mother. (Matter of Emilio M., 37 NY2d at 176.) Although the Court held that the police were in compliance with the statute, it is clear that the delay was, at worst, a technical violation of the Family Court Act. In noting that there was no evidence of willful or negligent disregard of any statutory requirements, or of a pattern or practice of inattention to those requirements, the Court held that “no sufficiently useful prophylactic purpose would be served in penalizing the police for [the] failure to conform to the terms of the statute taken literally.” (Matter of Emilio M., 37 NY2d at 177.)
In People ex rel. Watson v Commissioner of N.Y. City Dept. of Correction (149 AD2d 120 [1st Dept 1989]), the First Department specifically addressed whether the procedural requirements of Executive Law § 259-i (3) (a) (i) were sufficiently observed in the context of a warrantless arrest by a parole officer. The petitioner in Watson was given three special conditions of release, one of which was to keep a particular appointment that had been scheduled. Petitioner did not show up for that appointment, and he was immediately seized and handcuffed by
*933 several parole officers when he reported to his parole office later that same evening. After he was restrained he was questioned by his parole officer regarding his failure to keep the scheduled appointment, and petitioner refused to answer any of the questions. The parole officer did not testify at the preliminary hearing, after which the hearing officer made a probable cause determination as to one charge concerning petitioner’s refusal to answer the questions posed by his parole officer. Without his parole officer’s testimony, however, the hearing officer held that the Division failed to establish that petitioner violated the special conditions of his parole. Petitioner then sought a writ of habeas corpus, and that application was denied. In reversing the denial of the writ, the First Department held that “[g]iven the difficulty in assessing the application of constitutional safeguards in the context of parole revocation, it is appropriate to regard the procedural requirements contained in [the Executive Law] as representing the minimum procedural due process which must be afforded to the parolee.” (People ex rel. Watson, 149 AD2d at 125 [emphasis added]; accord People ex rel. Walker v Warden of Rikers Is. Correctional Facility, 162 AD2d 107 [1st Dept 1990].) Despite this pronouncement concerning procedural due process rights, the Court expressed little concern over the warrantless arrest. Instead, the Court based its decision on the fact that Executive Law § 259-i (3) (a) (i) requires a valid basis for the issuance of a warrant. While not specifically addressing the legality of the warrantless arrest, the First Department held that the act of remaining silent in response to questioning could not serve as a predicate for the detention because the detention had already occurred. (People ex rel. Watson, 149 AD2d at 123.) Therefore, the First Department did not grant the writ because of the warrantless arrest but because there was no evidence of a valid basis for the issuance of a warrant at the time of the arrest.
More recently, the First Department has applied the Dyla rationale to another scenario in the parole revocation context. In People ex rel. Jude v Warden, Rikers Is. Correctional Facility (47 AD3d 454 [1st Dept 2008], lv denied 10 NY3d 709 [2008]), petitioner argued that the individual who prepared the violation report in his case was merely a parole revocation specialist, and not a parole officer, within the meaning of the same statute and regulation at issue in the instant matter. In affirming the lower court and rejecting petitioner’s claim, the First Department held that even if petitioner’s claim was accurate, the “regula *934 tion involves no more than ‘procedural housekeeping’ and does not present a substantive violation of [the] petitioner’s statutory or due process rights.” (People ex rel. Jude, 47 AD3d at 454 [emphasis added].) When read in conjunction with People ex rel. Watson v Commissioner of N.Y. City Dept. of Correction (149 AD2d 120 [1989]), it is clear that the First Department, in refusing to elevate form over substance, has required the violation of a parolee’s substantive, as opposed to procedural, due process rights before relief may be granted.
Turning now to the instant matter, the court begins by noting the well settled principle that a parolee is not entitled to the full panoply of rights due to a defendant in a criminal proceeding. (People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 203-204 [1983], citing Morrissey v Brewer, 408 US 471, 480-484 [1972].) In light of the foregoing cases, the court holds that the warrantless arrest in this case constitutes nothing more than the violation of a statutory right that does not implicate any of petitioner’s constitutional or substantive due process rights. The court also notes that, unlike the situation in People ex rel. Watson v Commissioner (149 AD2d at 120), the preliminary hearing officer specifically sustained the charge that formed the very basis for the arrest and the warrant that was subsequently obtained. Moreover, since this statutory violation has no effect on the validity of the warrant or the subsequent revocation proceedings, which were based solely on petitioner’s conduct prior to the warrantless arrest, the court sees no reason to impose the harsh remedy of dismissal. There may conceivably be some instances where, as a matter of fundamental fairness, the Division of Parole should not be allowed to exploit the violation of a statutory right even where the statute at issue does not implicate any constitutional rights. However, that is not the case here, where there is no evidence of bad faith or the willful or negligent disregard of the statutory warrant requirement. (Dyla, 142 AD2d at 433; Emilio M., 37 NY2d at 177.) Nor is there any evidence of any pattern or practice of inattention to such requirements by the Division. (See Matter of Emilio M., 37 NY2d at 177.) Dismissing the charges in the absence of such evidence, as petitioner seeks, would be tantamount to granting a parolee greater protections than those guaranteed to a criminal defendant, even though no constitutional rights have been violated.
For the foregoing reasons, the application for a writ of habeas corpus is denied.

 The other two charges alleged that petitioner violated his curfew and that he changed his parole-approved residence without prior notification or discussion with his parole officer.