OPINION OF THE COURT
Lucy Billings, J.
Petitioner challenges the New York State Board of Parole’s decision dated March 22, 2007, revoking his parole, incarcerating him for 18 months, and thus extending his mandatory parole supervision to May 2011. (CPLR 7803.) Although he was released from incarceration on May 29, 2008, he still challenges the determination insofar as it extended his mandatory parole supervision from July 2009 to May 2011 and seeks a new parole revocation hearing.
I. Undisputed Factual Background
Petitioner first was released from incarceration on parole on July 13, 2006. A special condition of his release on parole was that he maintain a curfew from 9:00 p.m. to 7:00 a.m. (9 NYCRR 8003.2 [1]; 8003.3.) On November 29, 2006, parole officers found that petitioner was not at his residence after 9:00 p.m. He was charged with a violation of this special condition of his release and two further violations of the conditions of his release on the same date: possession of a dangerous knife without an adequate explanation (9 NYCRR 8003.2 [i]), and fraternization with another parolee (9 NYCRR 8003.2 [g]).
At the preliminary parole revocation hearing on December 7, 2006, where petitioner was represented by an attorney, the hearing officer found that the New York State Division of Parole showed probable cause that petitioner possessed a dangerous knife without an adequate explanation, in violation of the terms of his parole. (9 NYCRR 8003.2 [i].) At the final parole revocation hearing on March 9, 2007, where petitioner also was represented by an attorney, the Division of Parole withdrew its charges regarding possession of a knife and fraternization with another parolee, in exchange for petitioner’s plea to violation of his curfew. On March 22, 2007, the Board of Parole imposed 18 months of incarceration as punishment.
*172 Since petitioner has completed the period of incarceration, its length is no longer an issue, except insofar as it extended his ensuing mandatory parole supervision from three years after his initial release in July 2006 to three years after his release from the subsequent 18 months of incarceration. (Executive Law § 259-j [4].) Therefore the issue to be determined is whether the record provides grounds to vacate his plea to the curfew violation and the resulting revocation of his parole.
II. The Conduct of the Preliminary Hearing
A. The Denial of an Adjournment
At the outset of .the preliminary hearing on December 7, 2006, petitioner, through his attorney, requested an adjournment because his landlady was unavailable that day and he wanted to subpoena her as a witness. He presented a letter from her demonstrating her knowledge of whether the knife parole officers recovered belonged to her or her employees, for use in renovating or repairing petitioner’s apartment, rather than belonging to petitioner. He claims not only that she was unavailable on December 7, 2006, but also that he was not notified of his right to subpoena witnesses at the preliminary hearing. The notice of violation that he signed as received on November 29, 2006, informed him that at that hearing he was “entitled to . . . present witnesses who can give relevant information,” but did not inform him of any right or procedure to subpoena witnesses who might not appear voluntarily. (Respondent’s supplemental exhibit A.) A subpoena, moreover, required petitioner’s appearance before the hearing officer, as only she, not petitioner or his attorney, was authorized to issue a subpoena to compel attendance at the preliminary hearing. (9 NYCRR 8000.6 [a] [1].)
The same notice also informed petitioner that: “A request to adjourn . . . should be made in the case of a preliminary hearing, at least three days . . . prior to the hearing, in writing, to the local area office. Requests for adjournments made at the hearing will only be granted in exceptional cases.” (Respondent’s supplemental exhibit A.) The record does not establish, however, that petitioner failed to follow the procedure for requesting an adjournment in advance. The hearing officer recounted that, before the hearing, petitioner’s attorney had notified the Division of Parole that petitioner sought an adjournment to enable him to call a witness who was unavailable on December 7, 2006. Nowhere does the hearing officer indicate that this prior notice was late or otherwise inadequate. (See 9 NYCRR 8005.6 [c].)
*173 Tellingly, in denying petitioner an adjournment, the hearing officer did not rely on this notice or on his attorney’s ability to advise him regarding the right and procedure to subpoena witnesses. The hearing record reflects that the hearing officer accepted (1) not only Parole Officer Alan Cohen’s testimony that, when he explained to petitioner’s landlady what was found on her premises on November 29, 2006, she responded that she “could say the knife was hers,” but also (2) his assessment of her credibility, “as if she was trying to take the blame away from him.” (Answer, exhibit 4, at 4.) Officer Cohen further testified that the landlady lived in a separate apartment with a separate entrance from petitioner: facts of little consequence had the hearing officer considered petitioner’s offer of the landlady’s testimony. Yet, in denying petitioner an adjournment because “I don’t know how much that witness is going to help your client’s case,” the hearing officer relied on both Officer Cohen’s testimony regarding the landlady, including her hearsay statement, without allowing cross-examination, and his aspersions on her credibility, without her testifying before the hearing officer. (Id. at 5; see Executive Law § 259-i [3] [c] [v]; 9 NYCRR 8005.7 [a] [2].)
The hearing officer might have been within her broad discretion to deny the adjournment based on petitioner’s failure to request an adjournment in writing sufficiently in advance and a determination that his case was not “exceptional” or on the availability of his attorney to advise him about subpoenaing witnesses. (Respondent’s supplemental exhibit A; see 9 NYCRR 8006.6 [a] [1]; 8005.6 [c]; People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 201 [1983]; Santora & McKay v Mazzella, 211 AD2d 460, 462 [1st Dept 1995]; People v Rodriguez, 6 AD3d 814, 816 [3d Dept 2004]; Matter of Shepard, 286 AD2d 336, 337 [2d Dept 2001].) Because the basis was instead the value of the proffered witness’ testimony, however, the hearing officer abused her discretion in relying on the parole officer’s assessment of that witness’ credibility, rather than on petitioner’s proffer of the substance of that witness’ testimony. (Romero v City of New York, 260 AD2d 461, 462 [2d Dept 1999].) As memorialized in the landlady’s letter, her testimony would show that the knife recovered belonged either to her or to a worker performing the many repairs in progress in petitioner’s apartment on November 29, 2006. Because the refusal to grant an adjournment thus deprived petitioner of his right to present a potential defense at the preliminary hearing, *174 resulting in continued curtailment of his liberty, the discretion to deny the adjournment was all the more limited and hence exceeded. (People v Rodriguez, 6 AD3d at 816; Matter of Shepard, 286 AD2d at 337; Romero v City of New York, 260 AD2d at 461-462; see Matter of Abdur-Raheem v Mann, 85 NY2d 113, 124 [1995].)
Even if petitioner’s witness might have been made available on December 7, 2006, via a subpoena issued in advance, 9 NYCRR 8000.6 (a) (l)’s dictates and the absence of further instructions regarding subpoenas generate confusion as to how a subpoena was to be obtained, short of seeking it from the hearing officer at the hearing and then adjourning to effectuate the subpoena. Since the Division’s own procedures contributed to the need for an adjournment, yet petitioner still requested it before the hearing, in good faith, and without any claimed prejudice or other reason militating against a postponement, the hearing officer further abused her discretion in denying the adjournment. (Santora & McKay v Mazzella, 211 AD2d at 462-463; People v Rodriguez, 6 AD3d at 816; Matter of Shepard, 286 AD2d at 337; Romero v City of New York, 260 AD2d at 461; see Matter of Abdur-Raheem v Mann, 85 NY2d at 124.)
An implied additional basis for the hearing officer’s denial of the adjournment may have been the hearing’s limited purpose: not to determine the weapon charge on its merits, but to determine whether probable cause supported the charge, according to the parole officers’ reasonable belief based on the facts before them. (Executive Law § 259-i [3] [c] [iv], [vi], [viii]; 9 NYCRR 8005.7 [a] [3]-[5]; Matter of McCants v Travis, 291 AD2d 594, 596 [3d Dept 2002].) Even if the landlady’s statements regarding the knife’s likely owner were unworthy of the parole officers’ belief, however, the record does not support a finding of probable cause that petitioner possessed a “dangerous knife” or an “instrument readily capable of causing physical injury.” (9 NYCRR 8003.2 [i]; answer, exhibit 1, at 1; Matter of Jamie D., 59 NY2d 589, 593 n [1983].)
B. The Finding of Probable Cause
After the hearing officer denied petitioner’s request for an adjournment, the testimony taken demonstrated only that the knife recovered behind the seat cushion of petitioner’s sofa was a closed folding knife, eight inches long in total, including a serrated blade three inches long. While Officer Cohen denied that the knife was capable of use in construction or repairs and *175 characterized the knife as “more like a hunting knife,” the objective physical description indicates a pocket knife that, at most, might be used to skin or pare a small prey after it was killed, but not to endanger a live being of appreciable size. (Answer, exhibit 4, at 6.)
“Dangerous knife” connotes a knife characterized as a weapon. (Matter of Jamie D., 59 NY2d at 592.) The knife’s inherent characteristics, even as Officer Cohen described them, do not fall within the term “dangerous knife” unless the circumstances of its possession, including petitioner’s behavior, demonstrate that he considered the knife a weapon. (Id. at 591; see Matter of Niazia F., 40 AD3d 292 [1st Dept 2007].) Viewed according to the parole officers’ testimony, the characteristics of the knife the officers recovered suggest “a utilitarian hunting knife,” which is “not a weapon.” (Matter of Jamie D., 59 NY2d at 593.) Such a knife, designed and primarily intended for use as a “utilitarian utensil,” would fall within the meaning of “dangerous” knife if by either physical modification or other circumstances of the knife’s possession petitioner had converted the knife into a weapon, an instrument other than what the utensil appeared to be. (Id.; see Matter of Niazia F, 40 AD3d at 292; Matter of Patrick L., 244 AD2d 244, 245 [1st Dept 1997]; Matter of Sean R., 33 AD3d 925, 926 [2d Dept 2006].) Nothing about the short serrated blade, folded into a closed, unexposed position, and buried between the seat cushions of petitioner’s sofa suggests the knife’s use as a weapon, rather than a utensil, whether for hunting or for apartment renovations. (Matter of Patrick L., 244 AD2d at 246; see Matter of Sean R., 33 AD3d at 926.)
Finally, the hearing officer found probable cause only that plaintiff “possessed a knife in violation of rule nine,” a condition of his parole. She never found probable cause that he violated that condition “in an important respect,” as required by Executive Law § 259-i (3) (c) (iv), (vi), and (viii) and 9 NYCRR 8005.7 (a) (3)-(5). (People ex rel. Watson v Commissioner of N.Y. City Dept. of Correction, 149 AD2d 120, 124-125 [1st Dept 1989].) Without such a finding, the Division failed to substantiate a ground for proceeding with the revocation of petitioner’s parole. (Id. at 125; see Matter of Rago v Alexander, 60 AD3d 1123, 1123 [3d Dept 2009]; Matter of Hicks v New York State Div. of Parole, 255 AD2d 842 [3d Dept 1998]; People ex rel. Bayham v Meloni, 182 Misc 2d 831, 833 [Monroe County Ct 1999].)
*176 III. The Final Parole Revocation Hearing
Nevertheless, even assuming the preliminary hearing officer abused her discretion in. denying an adjournment, or her finding of probable cause is inadequately supported, the issue remains whether the outcome of the preliminary hearing affected the outcome of the final parole revocation hearing.
A. The Circumstances Producing Petitioner’s Plea
Petitioner contends that the finding of probable cause for his possession of a dangerous knife was critical to his negotiation of a plea to the curfew violation in exchange for withdrawal of the knife possession and fraternization charges. As the administrative law judge (ALJ) at the final parole revocation hearing repeatedly emphasized, because petitioner was “accused of having a knife,” the weapon “used in [his] underlying offense,” described as “horrific,” his exposure at the final hearing was “tremendous.” (Answer, exhibit 5, at 4.) Neither she nor the Board could “overlook the knife,” the ALJ cautioned. (Id. at 5.)
On one hand, if petitioner believed his witness would defeat the weapon possession charge at the preliminary hearing, that same belief would have held true at the final hearing, where he had a further opportunity to present the witness. (See People ex rel. Frett v Warden of Rikers Is. Correctional Facility, 25 AD3d 472 [1st Dept 2006]; People ex rel. Benton v Farsi, 1 AD3d 126 [1st Dept 2003]; Matter of McCants v Travis, 291 AD2d at 596.) On the other hand, the ALJ persistently and persuasively warned that that pending charge, supported by the probable cause finding, posed potential consequences for petitioner, were it sustained, too weighty to risk. While the weapon possession was one of the two charges to which he maintained a strong defense, he was pressured by the prospect that his defense still might fail, leaving him to face the more dire consequences of that charge, in contrast to the curfew violation, the one charge of the three to which he truthfully could admit.
In sum, the knife possession charge was still pending, despite the grounds for its dismissal: both the insufficient evidence of a weapon and the absence of any finding that the evidence constituted probable cause for a violation of parole conditions “in an important respect.” (Executive Law § 259-i [3] [c] [iv], [vi], [viii]; 9 NYCRR 8005.7 [a] [3]-[5]; People ex rel. Watson v Commissioner of N.Y. City Dept. of Correction, 149 AD2d at 124-125.) Had petitioner not been denied an opportunity to present material rebuttal evidence, moreover, the landlady’s testimony that the knife was not owned or used by petitioner also may have *177 dictated dismissal. Either the current record or one allowing for petitioner’s evidence may have yielded, at minimum, a finding that the knife’s physical appearance and explained presence did not constitute a violation of parole conditions in an important respect.
The failure to dismiss the charge after the preliminary hearing as warranted then compelled petitioner at the final hearing to plead guilty to the curfew violation “out of necessity.” (People v Callahan, 80 NY2d 273, 282 [1992].) Under these ill-begotten circumstances, his plea may be ineffective even if not the product of outright duress. (Id.)
The weapon possession charge ultimately was withdrawn, to be sure. In the meantime, however, the prolonged pendency of the charge, despite its inadequate evidentiary support and the incomplete probable cause finding — deficiencies all the more glaring given the preclusion of material rebuttal evidence— produced petitioner’s plea. Had the charge been dismissed, petitioner would have had nothing to lose by contesting the curfew violation. Nothing suggests that the Division was proceeding with the fraternization charge or that it was a factor at either hearing. The companion charge against the other parolee involved was dismissed because the parolees did not know each other’s parolee status when they were attending the same birthday party. With only the curfew violation pending, petitioner might have negotiated a reduction or withdrawal of that charge.
Petitioner also proffers testimony to defeat or at least mitigate the curfew violation. A valid plea of guilty to that violation, of course, precludes a challenge to the sufficiency of evidence supporting the violation. (E.g. Matter of Holdip v Travis, 9 AD3d 825, 826 [4th Dept 2004]; Matter of Fuller v Goord, 299 AD2d 849 [4th Dept 2002]; People v Negron, 280 AD2d 780, 781 [3d Dept 2001].) Once he pleaded guilty, the plea itself constitutes sufficient evidence of his guilt. (Matter of Ramos v New York State Div. of Parole, 300 AD2d 852, 854 [3d Dept 2002]; Matter of Fuller v Goord, 299 AD2d at 849.)
Nevertheless, while the strength of petitioner’s rebuttal evidence is not a basis to vacate his plea, such evidence further shows how, before petitioner proceeded with a plea, his negotiating posture would have differed had the weapon possession charge been dismissed at the preliminary hearing. Neither the hearing officer at the preliminary hearing nor the ALJ at the final hearing made any finding regarding the evidence of the *178 curfew violation. Respondent concedes that petitioner was only 15 minutes late arriving home, and thus Officer Cohen’s testimony at the preliminary hearing regarding the time when parole officers arrived at petitioner’s home and found petitioner absent is correctly 8:32 p.m., rather than 9:32 p.m. as erroneously transcribed. The record also indicates an explanation for his delay: he was held up in traffic and, anticipating it might detain him past his curfew, so informed Officer Cohen via telephone, who in turn advised petitioner that no curfew violation would be pursued as long as there were no other charges against him.
B. The Inadequate Allocution
Executive Law § 259-i (3) (f) (x) and 9 NYCRR 8005.19 (e) and 8005.20 (b) require that a violation of parole conditions must be “in an important respect” to justify revocation. (Matter of Rago v Alexander, 60 AD3d at 1123-1124; Matter of Hicks v New York State Div. of Parole, 255 AD2d at 842; People ex rel. Bayham v Meloni, 182 Misc 2d at 833; see Executive Law § 259-i [3] [c] [iv], [vi], [viii]; 9 NYCRR 8005.7 [3]-[5]; People ex rel. Watson v Commissioner of N.Y. City Dept. of Correction, 149 AD2d at 124-125.) Petitioner acknowledged his guilt of the curfew violation, but the ALJ conducted no allocution regarding the elements of the violation and elicited no acknowledgment from petitioner that he had violated his curfew in an important respect. (See People v Aleman, 43 AD3d 756, 757 [1st Dept 2007].) Only his attorney stated that the violation was in an important respect. (See People v Colon, 42 AD3d 411, 412 [1st Dept 2007].)
The ALJ was constitutionally obligated to ensure that petitioner, when he pleaded guilty, fully understood what the plea meant and its consequences. (People v Ford, 86 NY2d 397, 402-403 [1995]; People v Aleman, 43 AD3d at 757.) The hearing record must establish that petitioner’s plea was both intelligent and voluntary. (People v Ford, 86 NY2d at 403.)
The record here affords little basis for concluding that petitioner’s plea was both intelligent and voluntary. The record contains no exchange between the ALJ and petitioner informing him or seeking his agreement that he was acknowledging a violation of his parole conditions in an important respect. (Id.; People v Seaberg, 74 NY2d 1, 11 [1989]; People v Aleman, 43 AD3d at 757; People v Colon, 42 AD3d at 412; see People v Mackie, 54 AD3d 651 [1st Dept 2008]; People v Palma, 305 AD2d *179 333, 334 [1st Dept 2003].) Nor does the perfunctory final exchange between the ALJ and petitioner’s attorney or any earlier colloquy in petitioner’s presence indicate that, at or before the final hearing, petitioner himself understood the significance of the terms, “in an important respect,” or agreed to them, let alone knowingly. (See People v Seaberg, 74 NY2d at 11; People v Colon, 42 AD3d at 412.) No inferences as to petitioner’s free and unequivocal affirmation that he violated his parole conditions “in an important respect” may be drawn from his responses (see e.g. People v Pringle, 10 AD3d 802, 803 [3d Dept 2004]), because no inquiry or discussion occurred (see People v Lopez, 71 NY2d 662, 666 [1988]) regarding those terms, whether he agreed with his attorney on that point, or the facts constituting a curfew violation in an important respect. (People v Colon, 42 AD3d at 412; see People v Mackie, 54 AD3d at 651-652; People v Palma, 305 AD2d at 334; People v Mahar, 12 AD3d 715, 716 [3d Dept 2004]; People v Hermance, 12 AD3d 851, 852 [3d Dept 2004].) A knowing and voluntary waiver of his right to a hearing may not be inferred from a “silent record” such as this one. (People v Callahan, 80 NY2d at 283.)
C. The Failure to Permit Evidence of Mitigation
Furthermore, when petitioner pleaded guilty, 9 NYCRR 8005.19 (b) required the ALJ to “direct the presentation of evidence, if any, with respect to mitigation of the violations and restoration to parole.” As set forth above, the ALJ never made any evidentiary finding relating to the curfew violation or any inquiry of petitioner as to the facts supporting the violation. Then, after perfunctorily accepting his plea, she also failed to provide him any opportunity to present evidence of the mitigating circumstances surrounding his delay in arriving home. Respondent has never challenged this proffered evidence, as much of it derives from the Division itself: the length of the delay, only 15 minutes; his explanation that he encountered unavoidable traffic; his advance notice to his parole officer; and the parole officer’s assurances that the lateness would not be considered important.
The picture painted by respondent’s own evidence is hardly a case of arrest for multiple criminal offenses or of failure to adhere to a parole officer’s directions. (See Matter of Rago v Alexander, 60 AD3d at 1123; Matter of Hicks v New York State Div. of Parole, 255 AD2d at 842.) The same “evidence . . . with respect to mitigation of the violations and restoration to parole” *180 (9 NYCRR 8005.19 [b]) that the ALJ foreclosed may equally show that petitioner did not violate a condition of his parole “in an important respect” to justify revocation. (Executive Law § 259-i [3] [f] [x]; 9 NYCRR 8005.19 [e]; 8005.20 [b]; Matter of Rago v Alexander, 60 AD3d at 1123-1124; Matter of Hicks v New York State Div. of Parole, 255 AD2d at 842; People ex rel. Bayham v Meloni, 182 Misc 2d at 833.)
IV Conclusion
A confluence of factors dictate a new final parole revocation hearing for petitioner. Upon the current record, there was no probable cause that petitioner possessed a “dangerous knife,” nor probable cause that, even if he did possess such an instrument, it violated his parole conditions “in an important respect.” Furthermore, even if the record supports probable cause for the violation in an important respect, the preliminary hearing officer abused her discretion in denying petitioner an adjournment to present a witness to rebut such probable cause.
Because the weapon possession charge was not dismissed after the preliminary hearing as required by the evidence adduced there and by the absence of an essential finding, the pendency of that charge was the overriding factor producing petitioner’s plea to a curfew violation. Nonetheless, he pleaded guilty only to violating his curfew and never intelligently and voluntarily pleaded guilty to violating his curfew in an important respect. Finally, even if the record supports a knowing and voluntary plea in every regard, without undue pressure or influence, the ALJ failed to allow the presentation of evidence on mitigation of the violation and restoration of parole.
Since no evidence in the record supports probable cause that petitioner possessed a dangerous knife on November 29, 2006, or previously fraternized with a person he knew to be parolee, the court dismisses those withdrawn charges with prejudice. The court also grants the petition to the extent of vacating petitioner’s plea of guilty to a violation of his curfew in an important respect and remanding that charge to respondent. Within 30 days after entry of this order, respondent shall hold a new final revocation hearing to determine whether petitioner violated his curfew in an important respect on November 29, 2006. (CPLR 7803 [1], [3]; 7806.)
If respondent determines that petitioner did not commit such a violation, respondent shall restore his parole effective November 29, 2006. If respondent determines that he did commit such a violation, respondent shall allow the presentation of *181 evidence on mitigation of the violation and restoration of parole.
This decision constitutes the court’s order and judgment on the petition. (CPLR 7806.) The court will retain jurisdiction over this proceeding, however, pending respondent’s decision after the new hearing. After that decision, either party may move by order to show cause for further relief consistent with this decision. The court will provide copies of this decision to petitioner and to respondent’s attorney.